## Richmond

MIDWEST MUTUAL INSURANCE COMPANY v. THE AETNA CASUALTY AND SURETY COMPANY.

April 23, 1976.

Record No. 750401.

Present, All the Justices.

*H. Merrill Pasco; Douglas W. Davis (E. Milton Farley, III; T. S. Ellis, III; Hunton, Williams, Gay & Gibson,* on briefs), for plaintiff in error.

*Henry H. McVey, III (McGuire, Woods & Battle,* on brief), for defendant in error.

COMPTON, J., delivered the opinion of the court.

This controversy involves the right of contribution between two carriers providing uninsured motorist protection to the same insured.

Midwest Mutual Insurance Company, the plaintiff below, brought this action at law for $6,000 against The Aetna Casualty & Surety Company seeking to recover one-half the amount Midwest paid to settle the uninsured motorist claim of Stanley S. Winston, Sr. Aetna's demurrer was sustained by the trial court and we awarded Midwest a writ of error to the December 10, 1974, order dismissing the action.

Midwest's motion for judgment states the following case, the effect of the demurrer being to admit as true all material facts which are well pleaded. On April 26, 1970, Winston was injured in an accident in the City of Richmond, while operating his motorcycle, as the result of the alleged negligence of an unknown motorist, hereinafter referred to as John Doe. At the time, Winston was an insured under certain policies of insurance issued by Midwest and Aetna which contained statutory[1] uninsured motorist coverage.

Following the accident, when Winston made his claim for damages, a dispute developed between Midwest and Aetna concerning the nature of the uninsured motorist protection afforded by their respective policies. Those policies are not before us and we are not confronted here with that coverage question. In this action, we must assume the policies extend identical coverage to the common insured.

Aetna rejected Midwest's demand to contribute to payment of a settlement of Winston's claim. Thereafter, on January 20, 1971, Midwest settled by paying Winston $12,000, a reasonable amount considering all the facts and circumstances, taking a release and assignment from him. No tort action had been filed against John Doe[2] prior to

---

[1] Code § 38.1-381(b) provides in pertinent part:

"Nor shall any such policy or contract relating to ownership, maintenance or use of a motor vehicle be so issued or delivered unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle . . . ."

Under Code § 38.1-381(c), if the operator of a motor vehicle is unknown, the vehicle is deemed uninsured.

[2] Code § 38.1-381(e) provides:

"(e) If the owner or operator of any vehicle causing injury or damages be unknown, an action may be instituted against the unknown defendant as 'John Doe' and service of process may be made by delivery of a copy of the motion for judgment or other pleadings to the clerk of the court in which the action is brought and service upon the insurance company issuing the policy shall be made as prescribed by law as though such insurance company were a party defendant. The insurance company shall have the right to file pleadings and take other action allowable by law in the name of John Doe."

settlement and, of course, no service of process had been made upon either insurer nor had any claim against John Doe been reduced to judgment.

On January 12, 1973, Midwest filed this suit. In sustaining Aetna's demurrer, the trial judge decided that "until judgment is obtained against the uninsured motorist, there is no *common obligation* of the respective insurers created by the accident" and that Midwest had no right of contribution against Aetna.

The sole issue is whether, under the foregoing facts, a right of contribution exists in favor of Midwest against Aetna in the absence of a judgment against the uninsured motorist which has been paid by Midwest.

Midwest argues that "a judgment against the uninsured motorist is not a prerequisite to contribution between uninsured motorist coinsurers" because "a common obligation between insurers can arise even though no judgment has been rendered against or in favor of their common insured". It contends that the Virginia uninsured motorist statute does not require that such a judgment be obtained before the right of contribution arises, pointing out that Code § 38.1-381(e), note 2 *supra*, provides that if the uninsured motorist is unknown, "an action *may* be instituted against the unknown defendant as 'John Doe'" and that Code § 38.1-381(e1)[3] provides "*if* any action is instituted against the owner or operator of an uninsured motor vehicle," the insured shall serve a copy of the process upon the insurer issuing the policy. These requirements obtain, according to Midwest's theory, *only* when the insured elects to enforce his uninsured motorist coverage by means of a suit against the uninsured motorist, and not when, as here, the insured decides to settle with one of two coinsurers without suit. It also contends that when the foregoing "permissive" provisions of the uninsured motorist statute are construed together, one must conclude that the General Assembly "did not intend to preclude settlement as a means of providing benefits to insured persons under the uninsured

---

[3] "(e1) Any insured intending to rely on the coverage required by paragraph (b) of this section [note 1 *supra*] shall, if any action is instituted against the owner or operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant; such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner or operator of the uninsured motor vehicle or in its own name; provided, however, that nothing in this paragraph shall prevent such owner or operator from employing counsel of his own choice and taking any action in his own interest in connection with such proceeding."

motorist statute." It argues that a "contrary view of the legislative intent would run counter to the strong public interest favoring the expeditious settlement of claims." We reject these contentions.

This problem must be solved within the strict confines of our uninsured motorist act applying the principles of equitable contribution, enforced in courts of law. As the trial judge emphasized, and as the parties recognize, the case turns on the time when a common obligation comes into existence between the insurers. "The right to contribution as such does not arise out of any express contract or agreement between the parties to indemnify each other, but is based on the broad principles of equity that where two or more persons are subject to a *common burden* it shall be borne equally, since the law implies a contract between them to contribute ratably towards the discharge of the *obligation*. But in order to enforce contribution the payment must have been made by one *obligated* to pay the whole, as between himself and the payee, but only *bound* to pay a proportionate part as between himself and his co-obligors. Thus where two or more persons *are liable* to pay a claim and one or more of them pays the whole of it, or more than his or her share, the one so paying may generally recover from the others the ratable proportion of the claim that each *ought* to pay." *Wiley N. Jackson Co.* v. *City of Norfolk*, 197 Va. 62, 66, 87 S.E.2d 781, 784 (1955) (emphasis added).

In this case, at the time Midwest paid the insured it was not legally obligated to him under the uninsured motorist statute, nor was Aetna; there was no common obligation. Under the statute, the obligation of the uninsured motorist insurer arises *only* if it is determined that the insured is "legally entitled to recover" damages from the owner or operator of an uninsured motor vehicle. Code § 38.1-381(b), note 1 *supra*. Judgment is the event which determines legal entitlement to recovery. But in an uninsured motorist case judgment alone against the tortfeasor will not suffice to fix the obligation of the uninsured motorist carrier.

If an insured intends to rely on the coverage required by our uninsured motorist statute, he *must* serve a copy of the process in any action instituted against the owner or operator of the uninsured motor vehicle upon the insurer issuing the policy. Code § 38.1-381(e1), note 3 *supra*. "It is evident that a copy of the process must be served on the insurance company before it may be held liable under the uninsured motorist act. The language employed is mandatory and establishes a condition precedent to the benefits of the statute unless waived by the

insurance company." *Creteau* v. *Phoenix Assurance Co.*, 202 Va. 641, 643-44, 119 S.E.2d 336, 339 (1961); *accord, Roenke* v. *Virginia Farm Bureau Mutual Insurance Co.*, 209 Va. 128, 130-32, 161 S.E.2d 704, 706-07 (1968); *State Farm Mutual Automobile Insurance Co.* v. *Duncan*, 203 Va. 440, 444, 125 S.E.2d 154, 157-58 (1962). Here there has been no waiver by Aetna, although Midwest has waived its right to rely on the statutory requirements by voluntarily settling with Winston, which it had a perfect right to do. But Midwest's election to waive does not affect Aetna's prerogative to insist that, as to its liability, there be compliance with the applicable statute, which became a part of its policy contract. Aetna and Midwest had separate policies of insurance covering Winston, and Aetna's contract liability could not be expanded by the unilateral conduct of Midwest.

■ The foregoing requirement that a judgment be obtained to determine legal entitlement to recovery, expressed in subsection (b), note 1 *supra,* is not eliminated by the so-called "permissive" provisions of subsections (e) and (e1), notes 2 and 3 *supra,* when, as here, the insured elects to enforce his coverage by settlement, as Midwest would have us decide. These clauses of subsections (e) and (e1), put in issue by Midwest, merely establish the procedure for prosecuting a suit against the uninsured motorist. The use of "may" and "if" in those clauses has no substantive effect and does not manifest a legislative intent that legal liability can be fixed, without judgment, against a nonsettling coinsurer in a case such as this. Nor do we believe, as Midwest in effect urges, that a public policy favoring expeditious settlement of claims should override the mandatory provision of the statute, which, as we have said, predicates the insurer's liability upon the insured's legal right to recover against the owner or operator of an uninsured motor vehicle.

Consequently, we hold that under these facts no right of contribution arose in favor of Midwest against Aetna because no judgment, obtained after valid service of process upon Aetna, had fixed the legal entitlement of the common insured to recover against John Doe.

Midwest relies on *Nationwide Mutual Insurance Co.* v. *Jewel Tea Co.*, 202 Va. 527, 531, 118 S.E.2d 646, 648-49 (1961), which holds that contribution among tortfeasors lies though no previous judgment has been obtained determining the issues of primary and contributory negligence. This case is not controlling here, principally because it was not decided under the uninsured motorists law but under Code § 8-627, which permits contribution among wrongdoers when the

wrong is a mere act of negligence involving no moral turpitude. In this connection, we should not lose sight of the basic difference between statutory uninsured motorist coverage in Virginia and the protection afforded by the "pure" indemnification provisions of a liability policy. Under the statutory uninsured motorist coverage, the carrier undertaking to protect its injured insured for damages caused by an uninsured tortfeasor owes no duty to that tortfeasor; the carrier is only obligated to pay a judgment within its coverage limits when one is obtained against the tortfeasor. "It is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in event of an accident." *Horne* v. *Superior Life Insurance Co.*, 203 Va. 282, 285, 123 S.E.2d 401, 404 (1962). But under the usual liability provision, the insurer must defend the tortfeasor, its insured, against imposition of legal liability to the injured claimant, and this includes the duty to exercise good faith to settle within the policy limits any meritorious claim against the insured. *See Aetna Casualty & Surety Co.* v. *Price*, 206 Va. 749, 760-61, 146 S.E.2d 220, 227-28 (1966). Accordingly, under such liability provisions, not in issue here, contribution has been permitted as the result of settlement before judgment in the typical situation, such as in *Jewel Tea Co.*, where the insurer of one tortfeasor elects to settle with the injured party and thereafter seeks contribution from the other wrongdoer.

Furthermore, we are not persuaded by the holding of *Midwest Mutual Insurance Co.* v. *Fireman's Fund Insurance Co.*, 258 S.C. 533, 189 S.E.2d 823 (1972), on which Midwest places considerable reliance. In that suit for contribution between uninsured motorist carriers on facts essentially identical to those in the present controversy, the Supreme Court of South Carolina rejected the argument of the non-settling insurer that the statutory right of subrogation against the tortfeasor, *see* Code § 38.1-381(f), was the settling carrier's *exclusive* remedy after compromise with the common insured. That argument is not made in this case nor was the precise issue presented here decided there. We do not hold, nor does Aetna contend, that subrogation against the wrongdoer was the *sole* remedy available to Midwest.

For these reasons, Midwest's motion for judgment fails to state a cause of action in contribution against Aetna and we affirm the trial court's action in sustaining the demurrer.

*Affirmed.*