## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### UNITED SERVICES AUTOMOBILE ASSOCIATION V.
### NATIONWIDE MUTUAL INSURANCE COMPANY

March 3, 1978.

Record No. 761598.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*Terry H. Davis, Jr. (Taylor, Gustin, Harris, Fears & Davis*, on briefs), for plaintiff in error.

*Palmer S. Rutherford, Jr. (George J. Dancigers; Eley, Rutherford & Leafe*, on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the Court.

On July 23, 1973, an accident occurred between an automobile operated by Betty Louise Oberg, whose liability insurance coverage was provided by United Services Automobile Association (United Services), and an automobile operated by Betty Markham Brewer, who had been insured under a liability insurance policy issued by Nationwide Mutual Insurance Company (Nationwide), also referred to in the pleadings as Nationwide Mutual Insurance Corporation. When Mrs. Oberg made claim against Mrs. Brewer, alleging personal injuries and property damage [1] caused by Mrs. Brewer's negligence, Nationwide denied coverage on the ground that it had cancelled Mrs. Brewer's policy prior to the accident. Mrs. Oberg then pressed her claim against United Services under the uninsured motorist provision of her own policy.

United Services made payments to Mrs. Oberg on June 28, 1975, and August 24, 1975, in the aggregate amount of $23,806.77 in full settlement of her claims. Seeking reimbursement in this amount from Nationwide, on April 2, 1976, United Services filed its motion for judgment in which, as subsequently amended, it

---

[1] The pleadings suggest that the claim for property damage may have been asserted, at least in part, by Mrs. Oberg's husband, but we shall herein treat both claims as Mrs. Oberg's.

alleged that as a result of Nationwide's wrongful denial of coverage to Mrs. Brewer, United Services had been required to pay Mrs. Oberg for Mrs. Brewer's negligence in causing the accident and had become subrogated to Mrs. Oberg's substantive rights. The trial court entered a final order sustaining Nationwide's demurrer on the ground that United Services' action, instituted more than two years after the date of the accident [2] without any action having been initiated by Mrs. Oberg prior to the expiration of the two-year period, could not be maintained.

United Services contends that the applicable statute of limitations is either two or three years,[3] and that it began to run only from the date when payment was made by United Services to its insured, so that its action against Nationwide for reimbursement, instituted within two years after such payment, is not barred. Nationwide, on the other hand, argues that United Services, as subrogee to the rights of its insured, was required to establish the legal liability of the uninsured motorist, before proceeding against Nationwide, the insurer denying coverage to the alleged tort-feasor. No action to fix the liability of Mrs. Brewer having been commenced by either Mrs. Oberg or her insurer within the period of two years after the accident, Nationwide says that the trial court ruled correctly that the action thereafter filed by United Services was barred.

█ The rights of the parties are determined by the provisions of Code § 38.1-381. Under § 38.1-381(b) a policy of automobile liability insurance is required to contain an endorsement or a provision agreeing to pay the insured all sums to which he may be legally entitled as damages from the owner or operator of an uninsured motor vehicle. The parties agree that under the provisions of § 38.1-381(c) denial of coverage by Nationwide made Mrs. Brewer an operator of an uninsured motor vehicle within the meaning of Mrs. Oberg's liability policy.

United Services proceeded to negotiate with its insured. Mrs.

---

[2] Code § 8-24 (Cum. Supp. 1976), now § 8.01-243 (Repl. Vol. 1977), requires that an action for personal injuries and an action for injury to property shall be brought within two and five years, respectively, after the cause of action shall have accrued.

[3] Code § 8-13 (Cum. Supp. 1976), now § 8.01-246 (Repl. Vol. 1977), requires that an action upon an implied contract and an action upon a contract in writing shall be brought within three and five years, respectively, after the cause of action shall have accrued.

Oberg, and settled her claims for damages alleged to have been caused by the negligence of Mrs. Brewer, the uninsured motorist, for the amount in controversy. No action was filed by Mrs. Oberg or by United Services against Mrs. Brewer. United Services merely filed its motion for judgment against Nationwide in the present case claiming subrogation to Mrs. Oberg's rights under Code § 38.1-381(f), which reads in pertinent part as follows:

"Any insurer paying a claim under the endorsement or provisions required by paragraph (b) of this section shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage and such person's insurer, notwithstanding that it may deny coverage for any reason, to the extent that payment was made; . . . ."

This is the only provision of the uninsured motorist law which permits subrogation. *U.S.F.&G.* v. *Byrum*, 206 Va. 815, 818, 146 S.E.2d 246, 248 (1966).

Under this statute, as amended in 1968 (Acts 1968, c. 721), the uninsured motorist carrier which pays a claim is subrogated to the rights of its insured against the tort-feasor and his insurer. Prior to the amendment, we had held that the language of the statute restricted subrogation to the rights of the insured against the tort-feasor alone, so that an uninsured motorist carrier which paid the judgment of its insured against the uninsured motorist could not maintain an action for reimbursement against the tort-feasor's liability insurer which had denied coverage. *General Accident* v. *Aetna*, 208 Va. 467, 158 S.E.2d 750 (1968).

In Code § 38.1-381(g) the rights of an insured as to uninsured motorist coverage are safeguarded by the following prohibitions: ·

"No such endorsement or provisions shall contain any provision requiring arbitration of any claim arising under such endorsement or provisions, nor may anything be required of the insured except the establishment of legal liability, nor shall the insured be restricted or prevented in any manner from employing legal counsel or instituting legal proceedings."

Thus, United Services concedes that it could have required Mrs. Oberg to establish legal liability by reducing to judgment her claim against the uninsured motorist. United Services maintains, however, that it had the right to make a voluntary settlement with its insured, thereby enabling both to avoid the uncertainties, delays, and expense of litigation, and thereafter to exact reimbursement from the tort-feasor's liability insurance which had wrongfully denied coverage.

United Services did have the right to settle its contractual obligation under its policy with Mrs. Oberg, rather than requiring her to obtain judgment against Mrs. Brewer. *Midwest Mutual* v. *Aetna Casualty*, 216 Va. 926, 930, 223 S.E.2d 901, 904 (1976). In *Midwest Mutual*, however, where one uninsured motorist carrier settled with its insured and sought contribution from a second uninsured motorist carrier with identical coverage which had refused to participate in the settlement, we held that the trial court ruled correctly in sustaining a demurrer to the motion for judgment. The insurer that settled could waive for itself the requirement that the insured establish legal liability by obtaining judgment against the tort-feasor, but it could not by unilateral action waive this right for the non-settling carrier, which could demand, as a prerequisite to payment, full compliance by the insured with all the requirements of the uninsured motorist law.

United Services relies upon cases upholding the right of contribution between joint tort-feasors and between co-sureties. Thus, in *Nationwide Mutual* v. *Tea Company*, 202 Va. 527, 531-32, 118 S.E.2d 646, 648 (1961), we held that a right of contribution would lie as between joint tort-feasors, although no judgment had been obtained determining the issues of primary and contributory negligence. We also held that the right to contribution was based upon implied contract, so that the three-year statute of limitations, beginning on the date of payment, was applicable. To the same effect is *McKay* v. *Citizens Rapid Transit Co.*, 190 Va. 851, 859, 59 S.E.2d 121, 124 (1950). *See also Laws* v. *Spain*, 312 F. Supp. 315, 318 (E.D. Va. 1970). And in *Tate* v. *Winfree*, 99 Va. 255, 37 S.E. 956 (1901), we stated that the right of contribution between co-sureties arises, at the time of payment by one, from the implied promise of the other to pay, rather than from the written contract by which

they became sureties, so that the applicable statute of limitations is three years.

As we pointed out in *Midwest Mutual*, however, *Nationwide Mutual* is inapposite in determining rights under the uninsured motorist law because it was decided under Code § 8-627 (now § 8.01-34) which permits contribution among tort-feasors when the wrong results from negligence and involves no moral turpitude, and there is a basic difference between the duty of a liability insurer and that of an uninsured motorist carrier. The liability carrier has the duty to defend the insured and to exercise good faith to settle meritorious claims within the policy limits, an undertaking which is not required of the uninsured motorist carrier. 216 Va. at 930-31, 223 S.E.2d at 905.

Likewise, *Aetna Casualty & Surety Co.* v. *Whaley*, 173 Va. 11, 3 S.E.2d 395 (1939), is inapposite. There, the surety paid a foreign judgment against its insured and obtained an assignment. We held that the surety was required to enforce its right of subrogation within five years after making payment. But the right was controlled by a statute with which we are not concerned in the present case.

■ To determine the rights of United Services we must review the rights of Mrs. Oberg, who had a tort claim against Mrs. Brewer which would be barred by the statute of limitations two years after the accident. This would have been an *ex delicto* action to establish legal liability and damages. *John Doe* v. *Brown*, 203 Va. 508, 515, 125 S.E.2d 159, 164 (1962). It could have been followed by an *ex contractu* action brought by Mrs. Oberg against United Services to recover under the uninsured motorist provisions of her policy. *Rodgers* v. *Danko*, 204 Va. 140, 143, 129 S.E.2d 828, 830 (1963). The statute of limitations on the action *ex contractu* would have been five years from the date of judgment in the *ex delicto* action. Mrs. Oberg could not have sued United Services on her policy until she had obtained a judgment against the tort-feasor. *See O'Brien* v. *Government Employees Insurance Company*, 372 F.2d 335 (3d Cir. 1967).

When United Services settled with Mrs. Oberg it was subrogated to her right to institute an action on her tort claim against Mrs. Brewer, subject to the two-year statute of limitations, to the extent of the payment made in settlement. United Services did not elect to pursue this course.

An injured party is a beneficiary under the tort-feasor's liability policy from the moment of injury if the vehicle was being operated with the consent of the owner named in the policy. *Storm* v. *Nationwide Ins. Co.*, 199 Va. 130, 135, 97 S.E.2d 759, 762 (1957). *See Davis* v. *National Grange Insurance Company*, 281 F. Supp. 998 (E.D. Va. 1968), where it was held that the injured party may maintain an action in his own name under Code § 55-22, the third-party beneficiary statute, for the insurer's breach of its contract of insurance with the tort-feasor. Nevertheless, in Virginia, an injured person must reduce his claim to judgment before bringing an action against the tort-feasor's liability insurer. *Railroad* v. *Hughes-Keegan, Inc.*, 207 Va. 765, 773, 152 S.E.2d 28, 33-34 (1967); *Employers' Liability* v. *Taylor*, 164 Va. 103, 110, 178 S.E. 772, 774 (1935). Moreover, Code § 8.01-5 (formerly § 8-96), prohibits the joinder of an insurance company on account of the issuance of an insurance policy to or for the benefit of any party to any cause. Therefore, neither Mrs. Oberg nor United Services, as her subrogee, could maintain an action against Nationwide unless a judgment had first been obtained against Mrs. Brewer. Armed with a judgment, either could do so, subject to the five-year statute of limitations for claims arising under contracts in writing.

United Services relies strongly on an unreported decision of a trial court in the City of Norfolk. There, an uninsured motorist carrier settled with its insured, and more than two years after the accident instituted an action against the uninsured motorist for reimbursement. The trial court overruled a plea of the statute of limitations, and ruled, by analogy to contribution actions between tort-feasors and between co-sureties, that there was an implied promise to pay which was subject to the three-year statute of limitations beginning on the date of payment by the uninsured motorist carrier. In so ruling, the court expressly rejected the rationale of a law review writer who expressed the view, which we consider to be sound, that if an uninsured motorist carrier settled with its insured without consulting the uninsured motorist there could be no implied promise by the uninsured motorist to pay, but merely a tort claim assigned by law and barred two years after the accident. If settlement was made with the concurrence of the uninsured tort-feasor, however, there would be an implied promise by him to pay, and the three-year statute of limitations, beginning on

the date of payment by the uninsured motorist carrier, would apply. 47 Va. L. Rev. 145, 176-77 (1961).

United Services has not alleged in its pleadings that there was any implied promise by either Mrs. Brewer or Nationwide to pay Mrs. Oberg. Nor is there any allegation that Mrs. Brewer concurred in the decision to settle. United Services has only alleged, in general terms, that Mrs. Oberg had a claim against Mrs. Brewer for damages arising from the negligent operation of the Brewer vehicle; that Nationwide wrongfully denied liability insurance coverage to Mrs. Brewer; that United Services was thereby forced to pay the specified amount of damages to its insured, Mrs. Oberg, under the uninsured motorist provision of her insurance policy; and that United Services was subrogated to Mrs. Oberg's substantive rights against Nationwide. But these rights against Nationwide arise out of the insurance contract between Nationwide and Mrs. Brewer rather than from an implied promise by either to pay.

We are not dealing with joint tort-feasors or with co-sureties. We are dealing with a unique category of insurance coverage and with subrogation rights expressly granted by statute. We do not hold that subrogation was the exclusive remedy available to United Services. We merely observe that the amended motion for judgment filed herein specifies that subrogation is the vehicle by which relief is sought. Under these circumstances, United Services could be the beneficiary of no greater rights than those of its insured with whom it had settled. As Mrs. Oberg could not maintain an action against Nationwide for payment under its liability policy until she had obtained a judgment against the tort-feasor, United Services could not maintain its action against Nationwide without first reducing Mrs. Oberg's claim to judgment.[4] If the right of subrogation in the uninsured motorist law is to be further expanded to encourage the settlement of claims out of court, it is appropriate that this be done by legislative action rather than by judicial determination.

---

[4] The statute of limitations, of course, may now bar any personal injury action against Mrs. Brewer, but the five-year period applicable to property damage actions has not yet expired.

For the reasons assigned, we hold that the trial court correctly sustained Nationwide's demurrer to United Services' amended motion for judgment.

*Affirmed.*