[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12849
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-00002-CG-B


WILLIAM CLARK,

Plaintiff - Counter Defendant.
Appellant.


versus


AMERICAN MARINE & SALVAGE, LLC,

Defendant - Counter Claimant,
Appellee.


_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(October 23, 2012)

Before MARCUS, PRYOR and FAY, Circuit Judges.

PER CURIAM:

This appeal presents the issue whether an employee who performs a variety of tasks, including marine repairs, with most of his work on land, but other work on water, qualifies as a seaman under the Jones Act, 46 U.S.C. § 30104, and general maritime law.  The district court ruled that William Clark was not a seaman and entered summary judgment in favor of American Marine and against Clark's complaint of unseaworthiness and maintenance and cure, under maritime law, and negligence, under the Jones Act.  Because the record establishes that Clark's work had no substantial connection to a vessel in navigation, we affirm.

## I. BACKGROUND

American Marine provides commercial diving, welding, and repair services to shipowners in Mobile, Alabama.  In January 2010, Aubrey Roney, the owner of American Marine, hired Clark to operate the company office, respond to business calls, prepare invoices, and perform most of the diving, welding, and vessel repair work for the company.  Clark also cut the grass outside the office occasionally, and he performed repairs on a work barge owned by American Marine.  American Marine owned two vessels, the work barge and a dive boat, but Clark did not reside or work primarily on either vessel.

Clark kept a diary between January 1, 2010, and May 15, 2010, in which he recorded his daily tasks, hours, and mileage.  The entries in Clark's diary establish

2

that he worked 768.5 hours for American Marine, and that he spent 159 hours repairing the work barge. The entries in Clark's diary also establish that he spent 35.5 hours on a dive boat performing commercial dive work and 34.5 hours on the work barge performing repairs on Nathan Friedlander's dock.

The entries in Clark's diary, the way he described his tasks on invoices, and his deposition testimony established that Clark prepared his repair work primarily from land or from a customer's vessel. When Clark received a request for repair services, he traveled by land from the company office in his vehicle or a company vehicle to the customer's boat or dock. Clark entered the water from the dock or the customer's vessel, completed the repairs, and returned to his home or the business office.

On March 11, 2010, Clark recorded in his diary that he injured his "right elbow" when Roney helped Clark to climb on board a boat after resurfacing from a dive to "mark[] sunk[en] . . . barges of[f] [the] coast of Biloxi." Clark recorded that the "dive boat had no ladder [for a diver to use] to get on and off the boat." On May 10, 2011, Clark recorded that he "hurt [his] back trying to hold up [a] 20 foot I beam for [Roney]" while working at the Theodore Ship Channel. After he returned home from the same site on May 11, 2010, Clark recorded that his "back hurt[] bad, . . . but [he] [had to] keep going," and that Roney was "making [Clark]

3

drive [Roney's] truck from his house to the job site." And after working on the same job on May 12, 2010, Clark recorded that he "hurt [his] back pulling . . . [a] heavy catwalk onto [a] dock frame." On May 15, 2010, Clark resigned from his position with American Marine.

Clark filed a complaint for unseaworthiness and maintenance and cure, under maritime law, and for negligence, under the Jones Act, for the injuries he suffered during his work for American Marine, which moved for summary judgment against his complaint. American Marine argued that Clark did not qualify as a seaman because he had not worked a substantial amount of time in the service of a vessel in navigation. American Marine argued that the 70 hours Clark worked from the dive boat and work barge were insufficient for him to qualify as a seaman, and that the 159 hours that he spent repairing the work barge "did not take him to sea or expose him to the perils of the sea . . . [and] did not give him, in nature, a substantial connection to a vessel in navigation." To support its argument about the work barge, American Marine submitted photographs of the work site and an affidavit from Roney stating that Clark's repairs on the work barge were "mostly performed while the barge was drug up on the shore with the bottom of the barge resting on land" and never performed while the work barge was "in navigation"; Clark employed the "skills and training of a welder and steel

4

fabricator" to repair and improve the work barge; Clark's equipment included "a welding machine and a steel cutting torch"; the "welding machine and acetylene cutting gas cylinders were located on a utility trailer owned by Clark and always situated on land"; and the "welding leads and cutting torch were at all times tethered to the land based welding machine and cutting gases located on Clark's utility trailer."

The district court granted summary judgment in favor of American Marine. The district court ruled that, although the work barge was a vessel in navigation and Clark's repairs contributed to its functionality, Clark's "159 hours of dockside repair work . . . [did not] [bear] a substantial connection to a vessel in navigation." The district court concluded that Clark did not qualify as a seaman because he "spent only 9.1 [percent] of his time performing Jones Act work." The district court also rejected Clark's argument that he qualified as a seaman as a matter of law because his work as a commercial diver was inherently maritime.

## II. STANDARD OF REVIEW

We review a summary judgment de novo. City of Riviera Beach v. That Certain Unnamed Gray, Two Story Vessel Approximately Fifty-Seven Feet In Length, 649 F.3d 1259, 1265 (11th Cir. 2011). Because the issue of whether an employee qualifies as a "seaman . . . is a mixed question of law and fact, . . . it

5

often will be inappropriate to take the question from the jury." Harbor Tug and Barge Co. v. Papai, 520 U.S. 548, 554, 117 S. Ct. 1535, 1540 (1997); see Ardoin v. J. Ray McDermott & Co., 641 F.2d 277, 280 (5th Cir. 1981). "Nevertheless, 'summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.'" Papai, 520 U.S. at 554, 117 S. Ct. at 1540 (quoting McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356, 111 S. Ct. 807, 818 (1991)); see Roberts v. Williams-McWilliams Co., 648 F.2d 255, 261 (5th Cir. 1981).

### III. DISCUSSION

A two-part test governs whether a marine employee is a seaman: the employee's duties must "contribute to the function of the vessel," and the employee must "have a connection to a vessel in navigation . . . that is substantial in terms of both its duration and its nature." Chandris, Inc. v. Latsis, 515 U.S. 347, 368, 115 S. Ct. 2172, 2190 (1995) (internal quotation marks omitted). As a general rule, an employee "who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman." Id. at 371, 115 S. Ct. at 2191. "[T]he inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." Papai, 520 U.S. at 555, 117 S. Ct. at 1540. A seaman need not "aid in navigation

6

or contribute to the transportation of the vessel, but a seaman must be doing the ship's work." Wilander, 498 U.S. at 355, 111 S. Ct. at 817.  If the employee has "only a transitory or sporadic connection to a vessel in navigation, and . . . [his] employment does not regularly expose [him] to the perils of the sea," the employee is a "land-based worker . . . [who is not] entitled to . . . protection" under the Jones Act or maritime law.  Chandris, 515 U.S. at 368, 115 S. Ct. at 2190.

Clark worked only sporadically from a vessel in navigation.  Clark worked primarily from land and traveled by land to marinas and other sites from which sometimes he entered the water to perform marine repairs.  Clark worked only 70 of his 768.5 hours — or less than ten percent of his work hours — in the service of a vessel in navigation owned by American Marine.  Although the record establishes that the 159 hours during which Clark made repairs and improvements to the work barge contributed to its functionality, Clark performed most of the repair work on land or, at least, while tethered to a land base, and that work was not of a seafaring nature.

Clark makes two arguments that he performed seaman's work, but both arguments fail.  First, Clark argues that performing repairs to the work barge exposed him to the dangers of the sea.  Clark equates his work to that of a crane operator who worked on board a derrick barge moored in the Mississippi River to

7

load and unload cargo ships, see In re Endeavor Marine Inc., 234 F.3d 287, 289–92 (5th Cir. 2000), but the undisputed evidence establishes that Clark performed most of his repairs of the work barge while he was on land.  Second, Clark argues that his work as a commercial diver exposed him to marine perils, but "[s]eaman status is not coextensive with seamen's risks."  Chandris, 515 U.S. at 361, 115 S. Ct. at 2186.  Clark likens his situation to that of a commercial diver in Wallace v. Oceaneering International, 727 F.2d 427 (5th Cir. 1984), but that diver performed "[m]ore than 95 [percent] of [his] work . . . at sea" while "[h]e, along with the various other crew members, [worked,] ate and slept aboard" a semi-submersible drilling vessel anchored in the Gulf of Mexico, id. at 430, 436.  Clark, in contrast, had only a transitory and sporadic connection to a vessel owned by American Marine when he performed the work of a commercial diver.  See id. at 433–34 & n.4.

The district court correctly concluded that Clark did not qualify as a seaman.  Clark failed to introduce any evidence that his work was substantially connected to a vessel in navigation.  American Marine was entitled to a summary judgment against Clark's complaint.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of American Marine.

8