# CIRCUIT COURT OF THE CITY OF NORFOLK

Riverport Insurance Co.

v.

C&M Industries, Inc.,
JNB Marine, Inc.,
and Elgin Stodghill

Case No. (Civil) CL12-5624

By JUDGE CHARLES E. POSTON

November 26, 2013

This action is before the Court upon the demurrers of C&M Industries, Inc., JNB Marine, Indemnity Insurance Company of North America, New York Marine & General Insurance Company, and Steadfast Insurance Company. Having considered the written submissions of counsel, the papers filed in this action, and the argument of counsel, the Court will overrule the demurrers. IINA's motion to stay this action will also be denied.

## Facts and Procedural History

For familiar reasons, the facts will be viewed in the light most favorable to the plaintiff, taking all allegations of the complaint as true for purposes of adjudicating the demurrers. In August 2010, Elgin Stodghill was injured while working on a barge owned by JNB Marine (JNB) and chartered by C&M Industries (C&M). Stodghill filed a tort action in this Court against JNB and C&M seeking damages from the accident and pleaded alternatively that he was either a longshoreman or a Jones Act seaman. Riverport, C&M's insurer, initially filed a petition to intervene as a defendant in that action and the Court denied the prayer of that petition. In August 2012,

Riverport filed the instant declaratory judgment action against C&M, JNB, and Stodghill seeking a determination of coverage under its policy with C&M as well as Stodghill's status as either a longshoreman or Jones Act seaman. Subsequently, the Court granted Stodghill's Motion to Join JNB's insurer, IINA, IINA's excess insurer, New York Marine (NYM), and Riverport's alleged excess insurer, Steadfast, in the declaratory judgment action. Stodghill then filed a counterclaim against Riverport and cross-claims against C&M, JNB, IINA, NYM, and Steadfast seeking a declaratory judgment declaring that he is entitled to payment on any judgment that may be recovered in the underlying tort action against C&M or JNB under the terms of various insurance policies issued by IINA, NYM, Steadfast, and Riverport. In response, C&M, JNB, IINA, NYM, and Steadfast filed demurrers to Stodghill's cross-claims raising multiple issues. In brief, they argue that declaratory judgment is inappropriate for Stodghill's cross-claims. Each party offers either its own version of this argument or adopts the arguments of the other defendants in its demurrer.

## Discussion

When ruling on a defendant's demurrer, the court interprets the facts as they are alleged in the pleadings in the light most favorable to the plaintiff and makes all reasonable inferences in the plaintiff's favor. *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713, 636 S.E.2d 447, 449 (2006) (citing *Ward's Equipment, Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997)). The purpose of a demurrer is to test whether the plaintiff's claim is legally sufficient to support the relief requested. *Id.* (citing *Welding, Inc. v. Bland County Service Auth.*, 261 Va. 218, 226, 541 S.E.2d 909, 913 (2001)). Stodghill's cross-claims allege facts that are legally sufficient to support the relief he requests.

### A. *C&M & JNB's Demurrer to Stodghill's Cross-Claims*

C&M and JNB rely on *Charlottesville Area Fitness Club Operators Ass'n v. Albemarle County Board of Supervisors*, 285 Va. 87, 737 S.E.2d 1 (2013), to argue that this Court lacks jurisdiction over Stodghill's cross-claim. They contend that, because there is no justiciable controversy, declaratory judgment is inappropriate. In *Albemarle County*, a private association of fitness clubs brought declaratory judgment actions against county and state officials seeking a declaration that agreements entered into for the development of a recreation center were not valid. *Id.* at 95-96. The Supreme Court held that a justiciable controversy did not exist because the party seeking a declaratory judgment was a third party challenging governmental action without having statutory authorization to do so. *Id.* at 105. That holding addresses an issue inapposite to the one presented in the case at bar.

The issue now before the Court is whether a justiciable controversy exists for Stodghill's cross-claims against C&M and JNB, neither of which is a governmental entity but are rather alleged tortfeasors in the underlying tort action. It is well settled that insurance providers raise a justiciable controversy when they seek a declaratory judgment to determine coverage issues under a written instrument. *See, e.g., Government Employees Ins. Co. v. Moore*, 266 Va. 155, 161, 580 S.E.2d 823, 826 (2003); *Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 336, 302 S.E.2d 529, 534 (1983). However, the issue here is whether there is a justiciable controversy concerning rights under a policy for a tort victim's cross-claim against the tortfeasor in an action that originated when the insurance provider brought the declaratory judgment action. It would be difficult to hold that no controversy exists to support the cross-claim when a controversy clearly exists for Stodghill's other cross-claims against IINA and NYM. *Erie Ins. Group v. Hughes* holds that, when all parties to the controversy cannot be bound by a judgment, a court will lack jurisdiction to make a declaratory judgment because, if all parties are not included in a declaratory judgment action, they will later be able to assert the same coverage issues that were litigated in an earlier action against the insurance carriers. 240 Va. 165, 169-70, 393 S.E.2d 210, 212 (1990). JNB is a party to the controversy regarding coverage between Stodghill and IINA. Likewise, C&M is a party to the controversy regarding coverage between Stodghill and Riverport. If, then, a justiciable controversy exists for Stodghill's other cross-claims against IINA, NYM, and Steadfast, it is necessary that C&M and JNB be bound to any declaratory judgment action brought by Riverport or Stodghill. Otherwise, the alleged tortfeasors in this case could re-litigate the same coverage issues against the insurance carriers in a later proceeding.

C&M and JNB also demur to Stodghill's cross-claims against them by arguing that Stodghill fails to state a claim upon which relief can be granted. The Virginia Declaratory Judgment Act states:

> In cases of actual controversy, circuit courts within the scope of their respective jurisdictions shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed and no action or proceeding shall be open to objection on the ground that a judgment order or decree merely declaratory of right is prayed for. Controversies involving the interpretation of deeds, wills, and other instruments of writing, statutes, municipal ordinances, and other governmental regulations may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right.

Va. Code § 8.01-184 (2013). In a declaratory judgment action, it is not necessary to seek "consequential relief," because the purpose of that statute is to allow for the determination of the rights of parties to "guide parties in their future conduct in relation to each other." *Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 421, 177 S.E.2d 519, 524 (1970). In other words, to state a colorable claim for a declaratory judgment, Stodghill must assert that a justiciable controversy exists and that a declaratory judgment will provide "preventive relief" to guide the conduct of the parties in future litigation. *Miller v. Highland Cnty.*, 274 Va. 355, 370-71, 650 S.E.2d 532 (2007). For Stodghill to state a colorable claim, then, he must allege that he seeks determination of his rights under various insurance policy instruments. He has done so.

### B. *IINA and NYM's Demurrer to Stodghill's Cross-Claims*

IINA filed a demurrer to Stodghill's cross-claim and argued that Stodghill lacks standing for a declaratory judgment action against them. Alternatively, IINA asked for this action to be stayed pending resolution of the underlying tort case. NYM filed a demurrer arguing Stodghill lacks standing to bring a declaratory judgment action against them, that Stodghill's cross-claim does not grow out of the declaratory judgment action, and that there is no controversy because NYM's policy will not be implicated regardless of whether Stodghill was a longshoreman or Jones Act seaman. Also, IINA adopts by reference several of NYM's arguments. Each of these arguments is addressed below.

First, IINA and NYM's demurrers question whether a declaratory judgment regarding the interpretation of rights under various insurance policies is appropriate when the judgment sought includes a determination of a disputed fact at issue in a pending tort action. The Virginia Supreme Court has held that a court must exercise "great care and caution" when entering a declaratory judgment. *USAA Cas. Ins. Co. v. Randolph*, 255 Va. 342, 346, 497 S.E.2d 744, 746 (1998). Further, declaratory judgment is inappropriate when a court is asked to determine a factual dispute that can be resolved in other available proceedings. *Id.* at 346-47. For example, in *Randolph*, a worker sought a declaration of whether the workers' compensation bar would prevent recovery when he was accidentally shot in an employee parking lot after work. *Id.* at 345. In that case, the declaratory judgment action was sought to determine the factual issue of whether the injury arose in the course of employment. Resolution of that issue would then determine another disputed question of whether the workers' compensation bar applied. *Id.* The Virginia Supreme Court held that the circuit court did not have authority to render a declaratory judgment in this case because such a judgment would only resolve a factual issue determining liability without determining any rights under a written policy. *Id.* at 347-48. Nevertheless, according to the *Randolph* court, if a declaratory judgment resolves a

question of coverage and interpretation of rights under an insurance policy, then the court has authority to issue a declaratory judgment. *Id*. at 348.

In *Reisen v. Aetna Life & Casualty Co.*, an insurance provider sought a declaratory judgment to determine if an action was intentional, a factual question that would determine an insurance coverage issue. 225 Va. 327, 332, 302 S.E.2d 529, 531-32 (1983). The court in *Reisen* found that determination of the factual issue at the declaratory judgment stage did not render the declaratory judgment action inappropriate. *Id*. at 336. Instead, the *Reisen* court found declaratory judgment to be appropriate because the court was concerned that the insurer would re-litigate the same coverage issue after judgment in the underlying tort action. *Id*.

This Court has already applied the rules of *Randolph* and *Reisen* while addressing the issue of whether an injured third party may bring a declaratory judgment action against an alleged tortfeasor's insurance provider even when the declaratory judgment action will determine a factual issue that could be resolved in future litigation. *Nottingham v. Caviggiola*, 67 Va. Cir. 86 (2005). In *Nottingham*, a Penske truck leased or owned by Howmet Transport Service rear-ended another driver. *Id*. at 86. The injured driver sued the truck driver in federal court, and a key disputed issue in that case was whether Penske or the truck owner would be vicariously liable for the truck driver's negligent actions. *Id*. Simultaneously, the factual question of vicarious liability arose in a declaratory judgment action brought by the injured driver against various liability insurance carriers to determine his rights under the policies. *Id*. Referencing *Reisen*, this Court held that declaratory judgment was proper, "despite the fact that the critical factual issue to be litigated is a material fact in the underlying tort action." *Id*. at 90. In *Nottingham*, this Court distinguished *Randolph* and determined that there was an actual controversy, holding that "Nottingham is asking the court to interpret various insurance policies so that parties can be guided in their future conduct in relation to each other." *Id*. Here, as in *Nottingham*, this Court is being asked to issue a declaratory judgment to determine a factual issue pending in an underlying tort action, the resolution of which will determine the rights of the parties under various insurance policy agreements.

Citing *United Services Auto. Ass'n v. Nationwide Mut. Ins. Co.*, 218 Va. 861, 241 S.E.2d 784 (1978), IINA urges that Stodghill lacks standing to bring a declaratory judgment action because the underlying tort action must come to judgment first. That case involved a subrogation action brought by an uninsured motorist carrier against the third-party insurer of a tortfeasor after the uninsured motorist carrier and the tort victim had worked a settlement. *Id*. at 861-65. The statute of limitations period for the tort victim to bring an action against the alleged tortfeasor had lapsed, and the third-party insurer was not a party to the settlement agreement between the victim and her uninsured motorist carrier. *Id*. Because the alleged

victim never instituted an underlying tort action, the court held that the uninsured motorist carrier could not subrogate rights she did not have to the uninsured motorist carrier. *Id.* at 868. IINA's reliance on *Nationwide* is misplaced because that case dealt with the issue of whether there was standing for a subrogation action rather than a declaratory judgment action. Here, Stodghill is an alleged tort victim seeking declaratory judgment to determine his rights under various insurance policies to guide the future conduct of the parties.

IINA argues that, in *Reisen*, a justiciable controversy was found to exist because the alleged tortfeasor offered to settle, whereas here, there has been no settlement offer. In *Reisen*, the tort plaintiff's offer to settle was within the policy limits while the initial complaint alleged damages in excess of those limits. *Id.* at 335. The settlement offer raised a conflict between the insurer's duty to its insured and the insurer's own interests, and a declaratory judgment action resolved this conflict. *Id.* at 335. In other words, insurer had a duty to act in good faith in negotiating the best possible settlement for its insured, but this duty conflicted with its own interest to have the claim settle within the policy limits. However, it was not essential in *Reisen* that a settlement offer was made before a justiciable controversy was found to exist. In fact, the court there noted that the facts surrounding the settlement offer "illustrate the wisdom of declaratory judgment here." *Id.* Indeed, in the present case, although no offer to settle may yet have been made, a determination of coverage serves the purpose of the declaratory judgment statute, "so that parties can be guided in their future conduct in relation to each other and avoid the risk of action that would jeopardize their respective interests." *Nottingham*, 67 Va. Cir. at 90 (construing Va. Code § 8.01-184).

NYM also argues that, since the insurers here have not denied coverage, even though they are defending under a reservation of rights, no justiciable controversy exists. This is a fine distinction that leads to an absurd result. If this Court were to hold that a justiciable controversy for declaratory judgment exists only when there is outright denial of coverage, then insurers could avoid declaratory judgment proceedings at their pleasure by reserving their rights rather than denying coverage. In fact, in *Reisen*, the insurer did initially refuse to defend, but after refusing an offer to settle, the insurer proceeded to defend under a full reservation of rights. *Reisen*, 225 Va. at 330, 302 S.E.2d at 530.

NYM and IINA, by adopting NYM's arguments, also assert in their respective demurrers that Stodghill lacks standing for a declaratory judgment because Virginia lacks a direct action statute permitting an injured third party to sue an insurance company directly. The case law in Virginia does not directly address the issue of whether lack of a direct action statute precludes all actions by injured third parties against an alleged tortfeasor's insurance carrier. See *Martirosov v. Shenandoah Flight Servs., Inc.*, 64 Va. Cir. 163, 167-72 (2004) (holding that an injured third party may

bring a declaratory judgment action against an alleged tortfeasor's insurer, and pointing out that the Virginia Supreme Court has granted declaratory relief in similar cases). In constructing their argument regarding direct action statutes, NYM and IINA rely in large part on cases that do not address the present issue. IINA relies on *United Services Auto. Ass'n v. Nationwide Mut. Ins. Co.*, but that case addresses a subrogation action rather than a declaratory judgment action. 218 Va. at 861-62, 241 S.E.2d at 785-86. *Richmond, Fredericksburg & Potomac RR. v. Hughes-Keegan, Inc.*, also cited by IINA, does not involve a declaratory judgment action either. 207 Va. 765, 152 S.E.2d 28 (1967). The more telling authority, though, shows that the Supreme Court of Virginia has approved of granting declaratory relief when an injured third party has brought a declaratory judgment action against an alleged tortfeasor's insurer. *Craig v. Dye*, 259 Va. 533 (2000).

NYM and IINA, by adopting NYM's arguments, also assert that Stodghill's cross-claim is deficient because it does not "grow out of" Riverport's declaratory judgment action. Va. Sup. Ct. R. 3:10(a). Briefly, NYM argues that Stodghill's declaratory judgment action does not implicate any coverage issues other than those between Stodghill, Riverport, and JNB. According to Rule 3:10(a):

> A defendant may, at the defendant's option, plead as a cross-claim any cause of action that such defendant has or may have against one or more other defendants growing out of any matter pleaded in the complaint. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

*Id.* Here, Riverport is seeking a determination of Stodghill's status as a longshoreman or Jones Act seaman and a determination of its coverage under its policy with C&M. Stodghill's cross-claims against IINA and NYM seek a determination of rights under additional policies issued by them to JNB, policies that will be affected by a determination of Stodghill's status as a longshoreman or Jones Act seaman because they may be triggered if the damages in the underlying tort action exhaust the underlying defendant's principal policies. NYM and IINA's claims that their policies are not implicated because the facts here fall within exclusions are not appropriate for resolution on demurrer, because these claims ask this Court to resolve a factual question. Therefore, Stodghill's cross-claims against IINA and NYM grow out of Riverport's petition because IINA issued a liability policy to JNB that could be implicated in the underlying tort action and, if the damages there exhaust the IINA policy, NYM's would be triggered as well.

NYM argues that it is "entitled to judgment on the pleadings" because the excess policy has not yet been, "nor could it ever be" implicated. The first portion of this argument essentially states that the underlying tort case must come to judgment and that judgment must exceed the limits of the underlying policy before NYM's policy is implicated in the declaratory judgment action. This theory is contrary to the principles already addressed, showing that an underlying tort case need not be adjudicated before a court may determine potential coverage under an insurance policy. The second portion of this argument is that an employee exclusion policy applies, barring coverage. Availability or unavailability of coverage under such exclusion is a factual determination not appropriate for decision on demurrer. This Court, then, cannot, as a matter of law, conclude that the longshoreman or Jones Act seaman determination will not affect the rights of NYM.

Finally, the parties' conduct in future litigation will certainly be guided by a determination of the rights under various insurance policies by this declaratory judgment action. Staying these proceedings until the underlying tort action comes to judgment does not serve this end, and, indeed, may encourage further litigation.

## C. *Steadfast's Demurrer and Amended Demurrer*

Steadfast bases its demurrer and amended demurrer on the fact that it did not provide written consent to an endorsement on which coverage is provided in the underlying policy from Riverport to C&M. The application of Steadfast's excess policy to Riverport's policy involves questions of fact that are not properly determined on demurrer.

### Conclusion

This Court finds that a justiciable controversy exists between the parties and that declaratory judgment is appropriate. Accordingly, the defendants' demurrers will be overruled, and IINA's motion to stay will be denied.

### February 25, 2014

In this declaratory judgment action, the parties agreed to bifurcate the trial and first try the issue of the status of the Defendant, Elgin Stodghill. The issue was tried to the Court without a jury to determine whether, at the time of his injury, Stodghill was a longshoreman or a seaman. Having considered the evidence presented, the written submissions of the parties, and the argument of counsel, the Court is of the opinion that at the time of his injury, Elgin Stodghill was a longshoreman and not a Jones Act seaman.

## Background

Stodghill was injured while working aboard a barge owned by defendant C&M Terminals. In a separate tort action pending in this Court, Stodghill seeks damages under two theories. First, Stodghill alleges that he is a "seaman" entitled to recover for negligence under the Merchant Marine Act of 1920, 46 U.S.C. § 30104 *et seq.* (the "Jones Act"). In the alternative, Stodghill asserts that he is an "employee" as contemplated by the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 902(3) ("LHWCA") and is entitled to recover for the negligence under 33 U.S.C § 905(b). Riverport Insurance Company, one of the insurance carriers potentially liable for the tort claim, filed the instant declaratory judgment action to determine whether or not Stodghill qualifies as a Jones Act seaman and the liability of various insurance carriers. All parties agree that this declaratory action is appropriate.

## Discussion

The requirements for seaman status are two-fold. First, "an employee's duties must 'contribute to the function of the vessel or to the accomplishment of its mission'." *Chandris, Inc. v. Latsis,* 515 U.S. 347, 368, 115 S. Ct. 2172, 2190 (1995) (quoting *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 355, 111 S. Ct. 807, 817 (1991)). Second "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* The parties have stipulated that the sole issue for decision is whether Stodghill's connection to the JNB barges was substantial in nature.

Stodghill was an endorsed tankerman possessing the required United States Coast Guard certificate. Stodghill was assigned to a fleet of five barges and was primarily responsible for the loading and unloading of hazardous liquids. The barges were unmanned containers used to transport products. Indeed, no crew was assigned to the barges; the United States Coast Guard listed them as vessels requiring no crew. Stodghill performed his duties while the barges were moored either to the dock or to a ship that was moored to the dock. He usually drove to work and returned home each night, but, on at least one occasion, he rode on a tugboat to a work site. On that ride, however, Stodghill was simply a passenger, not unlike those who ride the Elizabeth River Ferry to work every morning. As the tankerman and person-in-charge on the moored barges, Stodghill worked in conjunction with the onshore loading master and person-in-charge who stood no more than a few feet from Stodghill. This onshore worker performed essentially the same duties as Stodghill, as it requires two people, one on the barge and one on the shore, to transfer safely hazardous materials from the barge to the shore. While working on the barge, Stodghill was reasonably close to hospitals and other medical facilities.

Jones Act remedies are reserved for maritime employees whose work regularly exposes them to "the special hazards and disadvantages to which they who go down to sea in ships are subjected." *Chandris*, 515 U.S. at 355, 115 S. Ct. at 2183. These "special hazards and disadvantages" are generally referred to as the "perils of the sea" and are essential to the determination of whether a worker's connection to a vessel in navigation is substantial in nature. "The nature of the maritime worker's duties must 'take him to sea,' which is shorthand for saying the worker's connection to the vessel should regularly expose him to the perils of the sea." *Hartley v. Williams S. Co., L.L.C.*, 2013 Tex. App. LEXIS 10445, *7 (citing *In re Endeavor Marine, Inc.*, 234 F.3d 287, 291 (5th Cir. 2000) (citing *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554-55, 117 S. Ct. 1535 (1997))); see also *Chandris*, 515 U.S. at 369-70, 115 S. Ct. 2172.

Courts have found that these special hazards include "the need to fight fires without outside assistance, the need to abandon ship, the need to survive exposure to inclement weather until help arrives, potential delay or inconvenience in being transported offsite to receive medical attention, and being stuck on a vessel under the control of its Master and operator for extended periods of time until the next port call." *Hartley*, 2013 Tex. App. LEXIS at *11 (citing *Duet v. American Commercial Lines, L.L.C.*, No. 12-3025, 2013 U.S. Dist. LEXIS 54937 (E.D. La. Apr. 17, 2013) (internal citations omitted)). In *Hartley*, the Texas Court of Appeals for the First District found that a worker who commuted every day to work, slept at home, and when injured on a barge was able to go to a hospital on land was not subjected to the perils of the sea. *Id.* at 11-12. In *Duet*, the Court found a worker who "was required to wear a life preserver at all times and contend[ed] that he faced hazard such as: (1) the dangers associated with the movement of vessels in water due to wind gusts and river turbulence; (2) trip and fall hazards caused by the icing of barge surfaces in the winter; (3) inclement weather; and (4) the dangers of 'long step[ping]' from barge to barge . . . was not exposed to the perils of the sea on a regular basis." No. 12-3025, 2013 U.S. Dist. LEXIS 54937 *12-13 (E.D. La. Apr. 17, 2013).

*Hartley* and *Duet* were both decided after the Fifth Circuit's decision in *In re Endeavor Marine, Inc.*, a case on which the Plaintiff relies heavily to support the proposition that Stodghill is a seaman. The *Endeavor* Court concluded that a crane operator aboard a barge on the Mississippi river was, as a matter of law, a seaman. *In re Endeavor Marine, Inc.*, 234 F.3d 287, 292 (5th Cir. 2000). The Fifth Circuit reversed the trial court's ruling that the crane operator was not a seaman, in part because the worker was "regularly exposed to the perils of the sea." *Id.* Plaintiff asserts that this is conclusive that workers aboard river-faring vessels who load and unload cargo are regularly exposed to the perils of the sea. While *Endeavor*, at first glance, supports the Plaintiff's argument, whether any worker aboard a barge is *actually* exposed to the perils of the sea is highly fact specific.

*Endeavor* reviewed the trial court's granting of summary judgment as did some of the related cases following *Endeavor*. *Endeavor* recognized that whether a worker is a seaman or longshoreman is a mixed question of law and fact, but its discussion is woefully bereft of much factual information. Other courts have offered more facts, and those cases are instructive.

A worker employed by a fishing vessel at the end of the fishing season to repair the vessel's engine and fuel tank was found not to be a seaman. His term of employment was coterminous with the commencement and end of the repair and only while the vessel was in port. While he was so employed, the vessel moved twice by tugboat. During one of the moves, he suffered back pain after handling the vessel's mooring lines. Under those facts, he was found to be a land-based worker, not a seaman. *Heise v. Fishing Co. of Alaska*, 79 F.3d 903 (9th Cir. 1966).

In contrast, the Ninth Circuit later found that a carpenter, who also worked as a deckhand and pile driver on a barge, raised disputable issues of material fact regarding whether he was a seaman. He worked on the barge both as it was moving and while it was moored. While not specifically stated in the opinion, it seems that a key factor in the court's ruling was the fact that he was required to work on the barge while it was being moved. *Delange v. Dutra Constr., Co.*, 183 F.3d 916 (9th Cir. 1999).

In *Gault v. Modern Continental/Roadway Constr. Co.*, 100 Cal. App. 4th 991 (2002), Gault was injured on a barge that was being used to build a bridge on a flood control channel. His connection to the barge would terminate when his work on the bridge ended. While aboard the barge, Gault handled mooring lines, and, while he was aboard, the barge moved twenty-four to thirty-six times. He had continuing responsibilities related to the movement of the barge, even though he was not specifically hired as a member of the crew. Under these facts, the question of whether Gault was a seaman was a factual issue to be resolved by the finder of fact, a decision that could go either way.

A commercial diver whose duties required him to perform commercial dives, help with the company's billing, repairing and maintaining the company's work barge failed to convince the court that he was a seaman. He never slept aboard the barge and ate all of his meals ashore. He went home every night and drove himself to and from the job site. Under these facts, he was denied seaman status. *Clark v. American Marine & Salvage, L.L.C.*, 2012 U.S. Dist. LEXIS 60681 (S.D. Ala. May 1, 2012), *aff'd*, 494 Fed. Appx. 32 (11th Cir. 2012).

The Maryland Court of Appeals looked to a "rule of thumb" that, to qualify as a seaman, one must have spent at least thirty percent of his work time in service of a vessel in navigation. *Dize v. Association of Md. Pilots*, 435 Md. 150, 153-54 (2012). The Court evidently found that "rule of thumb" in *Chandris*. *Id*. at 162. Whether such a rule of thumb is valid is not necessary to the decision of the case at bar. *Dize* is instructive,

though, for its enumeration of several duties that it found significant. *Dize* gives a rather lengthy list of duties that it found do not expose workers to the perils of the sea:

1. Performing overhauls and refits of vessels moored to land;
2. Painting;
3. Sandblasting;
4. Changing propellers, rotors, shafts, and rub rails;
5. Replacing zinc anodes;
6. Cleaning boat interiors;
7. Fueling.

*Id.* at 173.

Those duties, the *Dize* court found "did not subject him [i.e., Dize] to the 'caprices of open water,' and, in the case of an emergency, 'onshore assistance was never far away.' During the commission of this work, there would never be a 'need to abandon ship' or 'survive the elements until help arrives.' His proximity to shore meant that there was no danger of unusual 'delay or inconvenience in being transported to medical attention for injuries.' This work plainly did not subject Mr. Dize to the perils of the sea. . . ." *Id.*

Stodghill had fewer duties than any of the plaintiffs in the foregoing cases. He opened and closed valves to load and off load hazardous liquids on one of several barges. On occasion, he adjusted mooring lines. He neither lived, nor ate, nor travelled on the barge. He drove to and from work and was responsible for obtaining his own meals. On one occasion, he rode to the worksite on a tugboat, but his role on that tugboat was that of a mere passenger. He was not assigned to barge crew because the barge had no crew; it was a mere container used to transport a product. Stodghill was a land-based worker who literally stepped from shore onto the barge and exited in similar fashion, and his work did not isolate him from medical care.

These facts establish that Stodghill was not subjected to any special hazards or disadvantages. The loading master person-in-charge, whom all parties conceded is clearly a longshoreman, was subjected to the same hazards and disadvantages as Stodghill. As noted by counsel for C&M Industries, many of these hazards, such as exposure to wind, rain, and the dangers of slipping and falling, are simply the perils of outdoor employment. The Plaintiff contends that the fact that Stodghill was standing on a barge on the James River and the loading master person-in-charge was standing on the dock is significant enough to show that Stodghill's duties "take him to sea." The Court disagrees and finds that, at the time of his injury, Elgin Stodghill was a longshoreman and not Jones Act seaman.

Because Stodghill's connection to the barges is not substantial in nature, the Court finds that he is a longshoreman and not a Jones Act seaman.