PRESENT: All the Justices

EBENEZER MANU

v. Record No. 160852

OPINION BY
JUSTICE S. BERNARD GOODWYN
April 27, 2017

GEICO CASUALTY COMPANY

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Daniel E. Ortiz, Judge

In this appeal, we consider whether the Circuit Court of Fairfax County erred in sustaining a demurrer in a case in which the plaintiff alleged that an uninsured motorist (UM) insurance carrier violated its duty of good faith to its insured, by refusing to pay its UM policy limits prior to the insured obtaining a judgment against the uninsured tortfeasor.

BACKGROUND

Because this is an appeal from the circuit court's decision to sustain a demurrer to a complaint filed by the appellant, Ebenezer Manu (Manu), the facts are recounted as alleged in that pleading. *EMAC, L.L.C. v. County of Hanover*, 291 Va. 13, 20, 781 S.E.2d 181, 185 (2016).

On October 30, 2010, Manu was a passenger in a vehicle driven by Benjamin Boateng (Boateng) that was involved in a multi-vehicle automobile accident. Boateng had a personal auto insurance policy with a $25,000 limit. Manu was insured by GEICO Casualty Company (GEICO) under a personal auto insurance policy, which provided UM coverage with a $25,000 limit. On November 22, 2010, Manu notified GEICO of a potential UM claim.

Manu incurred $27,189.12 in medical bills and $6,375 in lost wages as a result of the accident. On October 19, 2012, Manu sued Boateng and John Doe in the Circuit Court of Fairfax County. Answers obtained in discovery from several drivers involved in the accident purportedly established that a John Doe driver was the cause of the accident. On September 19,

2013, Manu submitted this information to GEICO and advised GEICO of his intent to seek the $25,000 in UM coverage.

GEICO elected to defend John Doe. The trial against the defendants was scheduled for February 9, 2015. On January 30, 2015, Manu offered to settle the case for $12,500 from GEICO, and subsequently rejected GEICO's counter-offer of $5,000. One week before the trial, Manu settled the lawsuit against Boateng for Boateng's liability policy limit of $25,000, and proceeded to trial solely against John Doe.

During the trial against John Doe, the circuit court ruled that John Doe was negligent as a matter of law and that his negligence was a proximate cause of the collision. The trial proceeded on damages, and while GEICO did call a medical expert to testify, the expert did not contest Manu's medical bills or injuries. The jury returned a verdict of $68,528.24 in favor of Manu, plus costs and prejudgment interest, and, on February 10, 2015, the court entered judgment against John Doe for that amount.

On May 14, 2015, Manu filed a complaint against GEICO. Manu alleged that pursuant to Code § 8.01-66.1, GEICO was "charged with the duty to evaluate, adjust, and settle [uninsured motorist] claims against it in 'good faith,'" and, "notwithstanding said duty, GEICO's failure to settle plaintiff's claim within the $25,000 policy limit after plaintiff's January 30, 2015 demand violated Code § 8.01-66.1," and constituted a breach of GEICO's duty to act in good faith. Manu sought judgment against GEICO in the amount of $18,528, "representing the amount of the unpaid compensation damages awarded by the jury,"[1] plus unpaid prejudgment interest,

_____

[1] It is undisputed that GEICO promptly paid the limit of its UM policy after Manu obtained judgment against John Doe.

2

reasonable attorneys' fees of $30,000, and expenses, costs and double interest as provided under Code § 8.01-66.1(D).

GEICO filed a demurrer. On July 24, 2015, the circuit court held a hearing on the demurrer, and the presiding judge overruled GEICO's demurrer.

Manu served discovery requests upon GEICO on August 20, 2015. He subsequently filed a motion to compel when GEICO did not provide all the requested documents. GEICO responded, in part, that Manu had no right to the documents because he had not satisfied the statutory prerequisites of Code §§ 8.01-66.1 and 38.2-2206 in that, at the time of the alleged bad faith, he had not obtained a judgment against John Doe. During a December 18, 2015 hearing on this motion, the court deferred ruling on the motion and ordered additional briefing.

By letter dated January 28, 2016, the circuit court again deferred ruling on Manu's motion to compel, and invited GEICO to move for reconsideration of the prior decision overruling GEICO's demurrer. Following argument on February 26, 2016, the circuit court granted GEICO's motion to reconsider. It vacated the order overruling GEICO's demurrer, sustained GEICO's demurrer with prejudice, denied Manu's motion to compel as moot, and dismissed Manu's complaint with prejudice.

Manu appeals. His assignment of error asserts:

> The Trial Court erred by sustaining GEICO Casualty Company's Demurrer to Mr. Manu's Complaint which alleged a cause of action under Virginia Code § 8.01-66.1(D)(1). Specifically, the Trial Court erred in ruling that Virginia Code § 8.01-66.1(D)(1) did not provide Mr. Manu a remedy against GEICO Casualty Company for its alleged bad faith conduct in adjusting his uninsured motorist bodily injury claim.

3

Manu argues that Code § 8.01-66.1(D)(1) imposes a duty of good faith upon a UM carrier to evaluate, adjust and settle a demand by an insured for UM coverage, prior to the insured's obtaining judgment against the uninsured tortfeasor. GEICO responds, in part, that any duty of good faith imposed by Code § 8.01-66.1(D)(1) arises concurrently with a UM carrier's obligation to pay its insured under the policy, and that the obligation to pay under a UM policy is governed by Code § 38.2-2206, which does not obligate the insurer to make any payment to the insured until after the insured obtains a judgment against the alleged uninsured tortfeasor.

This appeal addresses the interpretation and interaction of two statutes concerning the duties of UM carriers in Virginia, Code § 38.2-2206 and Code § 8.01-66.1. "[A]n issue of statutory interpretation is a pure question of law which we review de novo." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007).

The critical question regarding Manu's assignment of error is whether either statute imposes a duty on the part of UM carriers to adjust and settle an insured's demand for payment under a UM policy before the insured obtains judgment against the uninsured tortfeasor. Accordingly, we first address a UM carrier's obligations which arise pursuant to Code § 38.2-2206. We then address whether and when Code § 8.01-66.1(D)(1) is triggered by the obligations imposed upon a UM insurer under Code § 38.2-2206, and whether Code § 8.01-66.1(D)(1) independently establishes any duty on the part of a UM carrier to adjust and settle UM claims before trial.

## I. Code § 38.2-2206 – Uninsured Motorist Insurance Coverage

Code § 38.2-2206, "Uninsured motorist insurance coverage," requires insurance companies to provide UM coverage, stating, in relevant part:

4

A. . . . . [N]o policy or contract of bodily injury or property damage liability insurance relating to the ownership, maintenance, or use of a motor vehicle shall be issued or delivered in this Commonwealth to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this Commonwealth upon any motor vehicle principally garaged or used in this Commonwealth *unless it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle*.

. . . .

F. If any action is instituted against the owner or operator of an uninsured or underinsured motor vehicle by any insured intending to rely on the uninsured or underinsured coverage provision or endorsement of this policy under which the insured is making a claim, then the insured shall serve a copy of the process upon this insurer in the manner prescribed by law, as though the insurer were a party defendant. . . . The insurer shall then have the right to file pleadings and take other action allowable by law in the name of the owner or operator of the uninsured or underinsured motor vehicle or in its own name.

(Emphasis added.) The parties agree that the instant UM policy comports with the requirements of Code § 38.2-2206. They also agree that, among the other prerequisites, an insured must be "legally entitled to recover" the damages he is seeking before a UM carrier's obligation to pay arises. However, they disagree as to the meaning of the phrase and the obligation it imposes upon a UM carrier. Code § 38.2-2206 does not define the phrase or any of its parts. *See* Code § 38.2-2206(B).

"When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." *Conyers*, 273 Va. at 104, 639 S.E.2d at 178 (internal citations omitted). Thus, we must examine the plain meaning of the words used by the legislature.

As noted above, a UM carrier must "pay the insured all sums that he is *legally entitled to recover* as damages from the owner or operator of an uninsured motor vehicle for bodily injury or property damage caused by the operation of an underinsured motor vehicle." Code § 38.2-

5

2206(A) (emphasis added). To "entitle" means "to give a right or legal title to; qualify (one) for something; furnish with the proper grounds for seeking or claiming something." Webster's Third New International Dictionary 758 (1993); *see also* Black's Law Dictionary 649 (10th ed. 2014) (defining "entitle" as "to grant a legal right to or qualify for," and "entitlement" as "[a]n absolute right to a (usually monetary) benefit, such as social security, granted immediately upon meeting a legal requirement"). To "recover" means "to obtain (relief) by judgment or other legal process; to obtain (a judgment) in one's favor; to obtain damages or other relief; to succeed in a lawsuit or legal proceeding." Black's at 1466. Generally, "damages" are "money claimed by, or ordered to be paid to, a person as compensation for loss or injury." *Id.* at 471 (citing Martin L. Newell, A Treatise on the Law of Malicious Prosecution, False Imprisonment, and the Abuse of Legal Process 491 (1892) ("The term defined: A sum of money adjudged to be paid by one person to another as compensation for a loss sustained by the latter in consequence of an injury committed by the former or a violation of some right.") and Frank Graham, The Law of Damages 1 (1936)).[2] A court renders its "final determination of the rights and obligations of parties in a case" in its "judgment." Black's at 970. Thus, by the statute's plain meaning, a UM carrier has a duty to pay, to an insured, damages which an uninsured motor vehicle owner or operator has been ordered by a court to pay the insured for bodily injury or property damage caused by operation of an uninsured motor vehicle.

This Court has previously interpreted Code § 38.2-2206 and its predecessor statute, Code § 38.1-381, consistently with the statute's plain language. In *Willard v. Aetna Casualty & Surety Co.*, 213 Va. 481, 482, 193 S.E.2d 776, 778 (1973), we stated that a UM carrier "would not be

---

[2] While the general definition suggests that a *claimed* amount constitutes damages, the sources relied upon indicate that damages are *determined* to be owed, not merely claimed.

subject to an action in contract on its uninsured motorist endorsement until judgment in tort had been entered against the unknown defendant referred to as 'John Doe.'"  We have explained that, "[u]nder the statute, the obligation of the uninsured motorist insurer arises *only* if it is determined that the insured is 'legally entitled to recover' damages from the owner or operator of an uninsured motor vehicle."  *Midwest Mut. Ins. Co. v. Aetna Casualty & Surety Co.*, 216 Va. 926, 929, 193 S.E.2d 901, 904 (1976) (emphasis in original).  "Judgment is the event which determines legal entitlement to recovery."  *Id.*[3]  Thus, Virginia precedent indicates that the duty owed by a UM carrier to its insured is to pay its insured the damages he or she is "legally entitled to recover," and that a judgment against the uninsured tortfeasor is required to create a legal entitlement to recover damages.

Manu claims that this Court, in the cases of *Aetna Casualty & Surety Co. v. Dodson*, 235 Va. 346, 367 S.E.2d 505 (1988), and *Colonial Insurance Co. v. Rainey*, 237 Va. 270, 377 S.E.2d 393 (1989), rejected or altered its previous holdings which stated that the phrase "legally entitled to recover" requires an insured to obtain a judgment against the uninsured motorist in order for a UM carrier to be obligated to pay.  We disagree.

*Dodson* concerned whether the insured's estate could recover under the UM provision of his policy when he was killed in a work-related car accident and the exclusive remedy clause of the Workers' Compensation Act barred recovery against the employer/owner and co-employee/operator in a tort action.  235 Va. at 348, 367 S.E.2d at 506.  In holding that the estate

---

[3] The fact that *Midwest Mutual* concerned a contribution action between two UM carriers does not render its holding inapplicable to the case at bar, because the basis for the Court's determination that Midwest was not liable to Aetna was that *neither carrier was liable to the insured*, as the insured had not obtained judgment against the tortfeasor.  *Midwest Mut.*, 216 Va. at 927-29, 223 S.E.2d at 902-04.

7

could not recover under the UM policy, we stated that "[t]he phrase 'legally entitled to recover as damages' interposes, as a condition precedent to the UM insurer's obligation, the requirement that the insured have a legally enforceable right to recover damages from the owner or operator of an uninsured motor vehicle." *Id.* at 350, 367 S.E.2d at 508. Further, in a footnote, we also stated that *Midwest Mutual's* "proposition that the insured is not 'legally entitled to recover' from an uninsured motorist until the insured's claim against the tortfeasor is reduced to judgment" was "inapposite." *Id.* at 351 n.6, 367 S.E.2d at 508 n.6. Manu argues that this language signaled a change in the Court's prior rulings that a judgment was required for an insured to be legally entitled to recover under its UM policy. Manu misconstrues the ruling in *Dodson*.

The Court in *Dodson* did not reach the issue of legal entitlement to payment, because it determined that the estate did not meet the threshold requirement of having a valid tort cause of action against the uninsured owner/operator, which is necessary to bring any potential claim within the scope of a UM policy. "Inapposite" means "not pertinent." Webster's at 1140. Rather than being a repudiation of *Midwest Mutual,* the statement in *Dodson* that the holding in *Midwest Mutual* was inapposite was a recognition that the issue before the Court in *Midwest Mutual*—the point at which the insured was legally entitled to payment from the UM carrier—was different from the issue in *Dodson*. The issue in *Dodson* was whether the Workers' Compensation Act completely foreclosed the insured's legal right to recover from the uninsured motorist such that the insured did not even have a potential right to recover from the UM carrier.

*Rainey* also concerned the scope of coverage, analyzing whether the UM policy requirement that "the injury or damage sustained must have been caused by accident and arise out of the ownership, maintenance, or use of the uninsured motor vehicle" was met where the

8

alleged operator was 200 feet away from the vehicle at the time of the accident. 237 Va. at 273, 377 S.E.2d at 395. The parties stipulated that the other elements of the policy, which "mirrored" Code § 38.2-2206, had been met, and asked the Court only to define the meaning of "operator" within the context of that statute; the Court was not asked to decide whether the requirement of legal entitlement to recover was satisfied. *Id.* Thus, not only is the holding in *Rainey* consistent with the prior cases, but also, any statement in *Rainey* regarding what is sufficient for legal entitlement to recover is dicta. *See Virginia Ry. & Power Co. v. Dressler*, 132 Va. 342, 350-51, 111 S.E. 243, 245-46 (1922) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which these expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in the subsequent suit when the very point is involved for decision.") (citation omitted).

*Dodson* and *Rainey* concerned whether an insured had a potential route to recover from the uninsured owner/operator such that the insured could possibly be entitled to recover from the UM carrier. In order for an insured to be eligible to recover *from a UM carrier*, he must first meet the threshold requirement of having a legally enforceable right to recover *from an uninsured motorist*. Indeed, *Rainey* cited *Dodson* for this proposition, noting that under Code § 38.2-2206,

> the insured must be legally entitled to recover damages from the person identified as the "operator." *See* [*Dodson*, 235 Va. at 350-51, 367 S.E.2d at 508] (statutory and uninsured motorist endorsement language "legally entitled to recover as damages" held to be plain and unambiguous, and to interpose "as *a condition precedent to the UM insurer's obligation, the requirement that the insured have a legally enforceable right to recover damages from an owner or operator of an uninsured motor vehicle*").

237 Va. at 274-75, 377 S.E.2d at 396 (emphasis added). This proposition is consistent with *Midwest Mutual*. Neither this Court's opinion in *Dodson*, 235 Va. at 348, 367 S.E.2d at 506, nor

9

its opinion in *Rainey*, 237 Va. at 275, 377 S.E.2d at 396, altered the clear holdings in *Willard* and *Midwest Mutual*, because *Dodson* and *Rainey* concerned threshold determinations of whether the insured came within the *scope* of the coverage of the UM policy and did not reach the issue of whether the insured was actually entitled to payment.

Additionally, our subsequent case of *State Farm Mutual Automobile Insurance Co. v. Kelly*, 238 Va. 192, 380 S.E.2d 654 (1989), put to rest any perception that *Dodson* or *Rainey* in any way called into question whether judgment against the uninsured tortfeasor is a prerequisite for a UM carrier having any obligation to pay its insured. In *Kelly* (decided three months after *Rainey*), we explicitly reaffirmed our ruling in *Midwest Mutual,* stating that "[j]udgment is the event which determines legal entitlement to recovery," and held that a UM carrier's liability "could not arise prior to the time [the insured's] right to recover was created—when the tort liability of the uninsured motorist was legally established." *Kelly*, 238 Va. at 195, 380 S.E.2d at 656.

In addition to obtaining a judgment against the uninsured tortfeasor, an insured who intends to rely upon the coverage required by the UM statute must also serve a copy of process upon the UM carrier. Code § 38.2-2206(F). *See Midwest Mut.*, 216 Va. at 929-30, 223 S.E.2d at 904. This notice effectuates the UM carrier's right to participate in the liability trial by filing pleadings and taking other actions in the name of John Doe, but it does not impose a duty of any kind upon the UM carrier to do so. *Id. See Nationwide Mut. Ins. Co. v. Hylton*, 260 Va. 56, 61, 530 S.E.2d 421, 423 (2000) (holding that a UM carrier is not a party to the liability case). This right to defend the uninsured motorist, untethered from any obligation to its insured or the motorist to participate in the liability trial, distinguishes UM carriers from liability carriers, because while a "liability carrier has the duty to defend the insured and to exercise good faith to

10

settle meritorious claims within the policy limits," that undertaking "is not required of the uninsured motorist carrier." *United States Auto. Ass'n v. Nationwide Mut. Ins. Co.*, 218 Va. 861, 866, 241 S.E.2d 784, 787 (1978).

In sum, the phrase "legally entitled to recover damages" imposes as a condition precedent to a UM carrier's obligation to pay its insured, that the insured obtain a judgment against the uninsured tortfeasor whose actions come within the purview of the UM policy. Of course, an insured's case is not even within the scope of UM policy coverage if the insured does not have a valid cause of action against the uninsured tortfeasor or if that tortfeasor is an individual whose actions do not come within the purview of the risk covered by the UM policy. Code § 38.2-2206 requires that a UM carrier be notified of potential claims, but it does not impose a duty upon a UM carrier to participate in the tort liability trial against the uninsured tortfeasor or to defend, adjust or settle a demand for payment under a UM policy prior to judgment being entered against the uninsured tortfeasor.

## II.  Code § 8.01-66.1 – Remedy for arbitrary refusal of motor vehicle insurance claim

Manu asserts that Code § 8.01-66.1(D)(1) creates and imposes upon a UM carrier a duty to attempt to adjust and settle a demand for UM coverage prior to the insured obtaining judgment against an uninsured tortfeasor. GEICO asserts that Code § 8.01-66.1(D)(1) does not apply to UM claims and is limited in its application to first-party insurance claims.

Code § 8.01-66.1 is entitled, "Remedy for arbitrary refusal of motor vehicle insurance claim," and under subsection D, it states

11

1. Whenever a court of proper jurisdiction finds that an insurance company licensed in this Commonwealth to write insurance as defined in § 38.2-124[4] denies, refuses or fails to pay to its insured a *claim* of more than $3,500 in excess of the deductible, if any, *under the provisions of a policy of motor vehicle insurance* issued by such company to the insured and it is subsequently found by the judge of a court of proper jurisdiction that *such denial, refusal or failure to pay was not made in good faith*, the company shall be liable to the insured *in the amount otherwise due and payable under the provisions of the insured's policy of motor vehicle insurance*, plus interest on the amount due at double the rate provided in § 6.2-301 from the date that the claim was submitted to the insurer or its authorized agent, together with reasonable attorney's fees and expenses.

(Emphases added.)[5]

This provision recognizes as bad faith the "denial, refusal or failure to pay" "a claim" under the provisions of a motor vehicle insurance policy as defined in Code § 38.2-124, which incorporates by reference Code § 38.2-2206(A), the UM statute. UM policies are motor vehicle insurance policies and Code § 8.01-66.1(D)(1) therefore applies to UM carriers.

A. Code § 8.01-66.1(D)(1) Did Not Create a Duty

Manu correctly notes that Code § 8.01-66.1(D)(1) provides a remedy against an insurer for "bad faith conduct." However, we must discern what constitutes bad faith regarding the payment of an insurance claim in the context of Code § 8.01-66.1(D)(1).

---

[4] Code § 38.2-124 states, in relevant part, that

A. "Motor vehicle insurance" means insurance against . . . . 2. Legal liability of the insured, and liability arising under subsection A of § 38.2-2206 and against loss, damage, or expense incident to a claim of such liability, arising out of the death or injury of any person resulting from the ownership, maintenance or use of motor vehicles.

[5] Subsection (D) was added in 1991, and subsequently the statute has twice been amended and reenacted to increase the value of the subject claim. *See* 1991 Acts ch. 155; 1997 Acts ch. 401; 2002 Acts ch. 631.

A covenant of good faith is implied in insurance contracts, and imposes a burden on both parties that neither will do anything in bad faith to injure the others' rights under the agreement. 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d §§ 198:4; 198:9 (rev. ed. 2007); *see, e.g., Aetna Casualty & Surety Co. v. Price*, 206 Va. 749, 761-62, 146 S.E.2d 220, 228 (1966) (adopting a bad faith, rather than negligence, rule regarding insurers' conduct toward their insureds). In this context, "bad faith" "connotes an action based on the insurer having breached the implied covenant of good faith and fair dealing." 14 Couch on Insurance 3d § 204:2; *see also State Farm Mut. Auto. Ins. Co. v. Floyd*, 235 Va. 136, 144, 366 S.E.2d 93, 98 (1988) ("Although not amounting to fraud in [the insurance] context, 'bad faith' runs counter to the presumption that contracting parties have acted in good faith."). "There are two common elements in a bad faith claim: (1) *the insurer's contractual liability to pay under the policy*; and (2) the lack of a reasonable basis to deny or compromise the claim." 6 New Appleman on Insurance Law Library Edition, Motor Vehicle Insurance § 63.18[1] (Jeffery E. Thomas ed., 2016) (emphasis added).

Code § 8.01-66.1(D) does not impose any additional conditions upon insurers; it provides a remedy to insureds against insurers who arbitrarily refuse to pay claims they owe under the terms of the insurance contract. *See* Code § 8.01-66.1(D)(1). Bad faith is failure to perform one's duty of good faith, and, in the insurance context, that duty flows from the obligations created by the insurance contract. Therefore, there can be no bad faith by an insurer in declining to perform an action the insurance contract does not require of it. *See* 14 Couch on Insurance 3d § 204:3 (observing that the essential question in determining bad faith is: "given the insurer's implied and express contractual duties . . . did the insurer act in a reasonable manner under the circumstances?").

First-party insurance pays directly to the insured. It is defined as "[a] policy that applies to an insured . . . such as life insurance, health insurance, disability insurance, and fire insurance." Black's at 922. UM coverage is characteristically similar to first-party insurance, because it is paid directly to the insured for the loss suffered by that same insured.

A "claim" must be "[t]he assertion of an *existing* right." Black's at 301 (emphasis added). *See* 6 New Appleman § 63.18[1]; *see also* 14 VAC § 5-400-20.[6] Thus, in the context of Code § 8.01-66.1(D)(1), a request for payment is not a "claim" subject to a covenant of good faith unless the insurer has a present contractual liability to pay it. In other words, a "claim" as defined in Code § 8.01-66.1(D)(1) must arise out of the occurrence of the contingency or loss covered by the insurance policy. The contingency or loss covered by a UM policy is payment to the insured of all sums that he is *legally entitled to recover as damages* from the owner or operator of an uninsured or underinsured vehicle. That contingency or loss does not occur until the insured obtains judgment against the uninsured tortfeasor.

Rather than creating a new duty, Code § 8.01-66.1(D)(1) incorporates the duties already established in the insurance policies it references and provides a remedy for the bad faith violation of those contractual duties. As discussed above, an insured does not have "an existing right" to payment from his UM carrier until he meets certain conditions: providing notice to the carrier and obtaining judgment against the underinsured motorist. Code §§ 38.2-2206(E) and

---

[6] "First Party Claimant" means "an individual . . . or other entity asserting a right of payment under an insurance policy or insurance contract issued to such individual . . . or other entity arising out of the occurrence of the contingency or loss covered by such policy or contract." 14 VAC § 5-400-20 (prescribing definitions pertaining to the rules governing unfair claim settlement practices as promulgated by the Bureau of Insurance of the State Corporation Commission).

14

(F). It follows that an insured does not have a UM "claim," as that term is used in Code § 8.01-66.1(D), until he obtains judgment, and further that there cannot be a bad faith denial of a demand for payment under a UM policy before the demand ripens into a "claim."[7]

Code § 8.01-66.1(D)(1) applies to any insurance policy as defined in Code § 38.2-124, not just UM policies. Code § 8.01-66.1(D)(1) uses the term "claim" as a trigger for the good faith protection afforded as to all of the policies incorporated within the statute. Under most first-party policies, an insured's "claim"—existing, enforceable right to payment—arises prior to and is not contingent upon obtaining a judgment. *See, e.g.*, collision claims under Code § 38.2-124(A)(1); medical payment claims under Code § 38.2-2206(A). However, as discussed above, a UM "claim" is unique because, pursuant to the terms of UM policies, as required by Code § 38.2-2206, an insured is required to obtain a judgment against the uninsured tortfeasor before the UM carrier is obligated to pay the insured on any such policy. Therefore, because there is no valid UM claim until judgment is obtained, there is also no duty for a UM carrier to pay or settle a demand for payment under the policy until judgment is obtained.

The statutory framework and legislative history confirm that UM carriers have no duty to settle prior to trial. *See Oraee v. Breeding*, 270 Va. 488, 498, 621 S.E.2d 48, 52 (2005) (holding that "we have a duty, whenever possible, to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal. Generally, the Court will look to the whole body of a statute to determine the true intention of each part.") (internal quotation

---

[7] We recognize that Black's Law Dictionary also defines "claim" as "[a] demand for money, property, or a legal remedy to which one asserts a right; esp. the part of a complaint in a civil action specifying what relief the plaintiff asks for. Also termed *claim for relief*." However, it is clear from the foregoing discussion that the term "claim" within the context of first-party insurance refers to an existing right. Under Code § 38.2-2206, an insured does not have a "claim" against the UM carrier until he satisfies the contractual prerequisites for payment by the insurer; a mere assertion or demand is not a "claim" in this context.

15

marks, alterations, and citations omitted). First, a UM insurer's pretrial participation is discretionary. Code §§ 38.2-2206(E) and (F); *see also Nationwide v. Hylton*, 260 Va. at 61, 530 S.E.2d at 423 (holding that a UM carrier's right to file pleadings in and receive notice of the liability trial does not create an obligation upon that carrier). It would be illogical for Code § 8.01-66.1(D)(1) to create a duty in UM carriers to settle at a stage in the proceeding where Code § 38.2-2206 imposes no duty to participate. Rather, reading the statutes in harmony indicates that the UM carrier's decision to settle pretrial is similarly discretionary; a carrier may settle prior to the insured obtaining judgment, but it has no duty to do so.

Second, Code § 8.01-66.1(D)(1) states that when an insurer is found to have acted in bad faith, the insured is entitled to the amount due, and interest on that amount "from the date that the claim was submitted to the insurer or its authorized agent, together with reasonable attorney's fees and expenses." The fact that interest and costs are measured from the date of the claim shows that the General Assembly intended the duty of good faith to arise when the insured is presently owed under the terms of the policy. In a UM policy context, that does not occur when the insured requests damages the insurer has no present obligation to pay, but rather when the insured obtains judgment against the uninsured tortfeasor.

Third, neither the Virginia Unfair Trade Practices Act, Code § 38.2-500 *et seq.*, nor the statutory history of Code § 8.01-66.1(D)(1) indicates the existence of a pretrial duty of good faith in the context of UM insurance, because each of those provisions addresses certain conduct by carriers *vis-a-vis* "claims." *See, e.g.*, Code §§ 38.2-510(A) (6), (7), (14); Final Report of the Joint Subcommittee Studying Motor Vehicle Insurance and Unisex Ratings, S. Doc. No. 29, at 5, 11-19 (1991). Additionally, although not conclusive, the failure of House Bill 1771 in 2015,

16

which proposed adding a subsection E to Code § 8.01-66.1 specifically regarding UM claims, suggests that UM claims are presently governed by the same statutes as other insurance claims, as discussed above.

Finally, this interpretation of Code § 8.01-66.1(D)(1) is consistent with this Court's treatment of remedial statutes. *See USAA Cas. Ins. Co. v. Alexander*, 248 Va. 185, 194, 445 S.E.2d 145, 150 (1994) (holding that "the statute governing UM insurance was enacted for the benefit of injured persons, is remedial in nature, and is liberally construed so that the purpose intended may be accomplished") (internal quotation marks, alteration, and citation omitted); *Board of Supervisors v. King Land Corp.*, 238 Va. 97, 103, 380 S.E.2d 895, 897 (1989) (observing that under the "mischief rule," "[e]very statute is to be read so as to promote the ability of the enactment to remedy the mischief at which it is directed") (internal quotation marks and citations omitted). The wrong that Code § 8.01-66.1(D)(1) is intended to address is the arbitrary refusal of insurance claims that an insurer has a present obligation to pay. Under Code § 38.2-2206, an insured is not entitled to payment from the UM carrier until she obtains judgment. Thus, any burden of litigation costs in the liability trial which may be incurred by an insured pursuing an uninsured tortfeasor is required by statute prior to a UM carrier becoming obligated to pay its insured under the terms of the UM policy. It is not the product of a UM carrier's bad faith and requires no remedy under Code § 8.01-66.1(D)(1).[8]

---

[8] The unique nature of good faith as regards UM policies distinguishes this case from our holding in *Nationwide Mut. Ins. Co. v. St. John*, 259 Va. 71, 75, 524 S.E.2d 649, 651 (2000). In *Nationwide*, we observed that Code § 8.01-66.1(A) "punish[es] an insurer whose bad faith dealings force an insured to incur the expense of litigation." *Id*. *Nationwide* analyzed a different subsection of Code § 8.01-66.1, subsection (A), which addresses medical payments. Unlike UM claims, the duty to pay medical claims arise prior to entry of judgment, and thus the statute is structured such that the insured should not have to bear the costs of litigation to obtain judgment. However, because an insured is not entitled to payment from a UM policy until she obtains

17

B.  Relief Afforded By Code § 8.01-66.1(D)(1)

That a duty of good faith arises in the context of UM policies only after a judgment has been obtained does not render Code § 8.01-66.1(D)(1) meaningless.  This statute creates a remedy for an insurance company's breach of contract in failing to pay amounts due under its policies and, as regards most first-party automobile insurance claims, no judgment is required to obligate the insurer to pay.  In the UM context, a breach occurs when a UM carrier arbitrarily refuses to pay once judgment has been obtained.  *See* 14 Couch on Insurance 3d § 198:8 ("Because the covenant of good faith is an implied term of the contract, a breach of that covenant entitles the non-breaching party to seek contractual remedies.").  In breach of contract actions, the insured can recover, at most, the policy limit; not punitive damages or attorneys' fees.  *See Manss-Owens Co. v. H.S. Owens & Son*, 129 Va. 183, 201, 105 S.E. 543, 549 (1921) (holding that the damages recoverable for breach of contract are those which arise from the breach of the contract itself).  However, under Code § 8.01-66.1(D), an insured may recover not only the amount due (the contract damages), but also double interest and attorneys' fees and costs.  Thus, Code § 8.01-66.1(D)(1) creates an enhanced recovery for an insured in proper UM bad faith actions.

CONCLUSION

In conclusion, we hold that Code § 8.01-66.1(D)(1) does not create a duty for UM carriers to settle a case prior to trial, but rather creates a remedy for the conduct of UM carriers that refuse in bad faith to pay once the insured has obtained judgment.  Therefore, for the above-

---

judgment, the cost of litigation to obtain judgment against an uninsured tortfeasor is not an unjust burden for which a remedy is required.

18

stated reasons, Manu's complaint failed to state a cognizable claim, and the circuit court did not err in sustaining GEICO's demurrer and dismissing Manu's claim with prejudice. Accordingly, we will affirm the judgment of the circuit court.

*Affirmed.*