PRESENT:  All the Justices

COMMONWEALTH OF VIRGINIA

v.  Record No. 170122

ERICA W. WILLIAMS

OPINION BY
JUSTICE S. BERNARD GOODWYN
March 1, 2018

FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
William N. Alexander II, Judge Designate

In this appeal, we consider whether the circuit court erred by dismissing a petition to remove an elected officer, pursuant to Code § 24.2-233, *et seq.*, on the grounds that the petition was not signed under penalty of perjury by a number of registered voters equal to ten percent of the votes cast in the prior election for that office.

BACKGROUND

On May 6, 2016, voters of Montgomery County filed a petition in the Circuit Court of Montgomery County to remove Erica W. Williams (Williams) from her elected position as Clerk of that court (Petition).  In a document entitled "Grounds for Removal," the Petition alleged that Williams had "neglected her duty, misused her office, or been incompetent in the performance of her duties[,] and her neglect of duty, misuse of office, or incompetence in the performance of her duties has had a material adverse effect upon the conduct of the office," after Williams fired approximately half of the personnel in the Clerk's office due to their failure to support her 2015 reelection campaign.

The Petition included 50 signatures of registered voters in Montgomery County who signed "under penalty of perjury" that the statement, "you believe sufficient grounds exist under Virginia law to remove Erica Williams from the office of Clerk of Court of Montgomery County,

Virginia," is "true and correct." The Petition also included over 1,800 signatures of registered voters.[1] These voters did not sign under penalty of perjury.

Pursuant to the terms of Code § 24.2-230, *et seq.* (the Removal Statutes), the circuit court issued a rule to show cause why Williams should not be removed from her position as clerk.

On October 3, 2016, by special appearance through counsel, Williams filed a motion to quash the rule to show cause. She alleged that the Commonwealth[2] failed to comply with Code §§ 24.2-233 and -235 on various grounds, including that only 50 people signed the Petition under penalty of perjury, instead of the required ten percent of the total number of voters who voted in the prior election.

The circuit court held a hearing on October 17, 2016. Williams argued that the rule to show cause should be quashed for the reasons stated in her motion, including that portions of the Petition did not incorporate the Grounds for Removal, and that the 1,800 signatures on those pages were not made under penalty of perjury. In response, the Commonwealth argued that only one signature under penalty of perjury was required on the Petition according to an opinion of the Attorney General, 1989 Op. Atty. Gen. Va. 221, 1989 Va. AG LEXIS 11 (Jan. 25, 1989). It asserted that the signatures of ten percent of the registered voters did not need to be made under penalty of perjury under Code § 24.2-233, and that a petition only needed to be signed under penalty of perjury by those making it under Code § 24.2-235. Williams responded that the ten

---

[1] Approximately 18,000 people voted in the prior election for clerk of the circuit court. Code § 24.2-233 requires that a petition for removal of an officer "be signed by a number of registered voters who reside within the jurisdiction of the officer equal to ten percent of the total number of votes cast at the last election for the office that the officer holds."

[2] Although the process for removal of an elected officer begins with a petition for removal signed by voters, pursuant to Code § 24.2-237, the "attorney for the Commonwealth shall represent the Commonwealth in any trial under" the Removal Statutes.

2

percent of voters who sign the Petition under Code § 24.2-233 constitute the "petitioners" who must sign the Petition under penalty of perjury under Code § 24.2-235.

The circuit court issued an order, on October 26, 2016, regarding the motion to quash. It found that, "[d]espite the use of different forms with different formats," the Petition was a single filing, and that the Petition set forth the grounds for removal with sufficient accuracy and detail under Code § 24.2-233. However, the court granted the motion to quash and dismissed the Petition "solely on the basis that the [P]etition was not signed by the petitioners under penalty of perjury as required by Virginia Code § 24.2-235," because "[a]ll of the petitioners did not sign the [P]etition under penalty of perjury."

The Commonwealth appeals the granting of the motion to quash and the dismissal of the Petition. The following assignment of error was granted:

> The Trial Court erred in dismissing a petition for removal of an elected official pursuant to Code Section 24.2-233 et seq. on the grounds that the entire ten percent of registered voters signing the petition must do so under penalty of perjury.

ANALYSIS

The Commonwealth argues that the circuit court erred by incorrectly merging the separate requirements of Code § 24.2-233, which requires a removal petition to be signed by a number of registered voters equal to ten percent of the votes cast in the prior election, and Code § 24.2-235, which requires that the removal petition be "signed by the person or persons making it under penalty of perjury." It claims that the Attorney General previously opined that these two statutes serve two different purposes and do not require that the signatures needed to meet the ten percent threshold be made under penalty of perjury, because the perjury signature requirement is to protect the official against frivolous charges, whereas the ten percent signature requirement is to ensure public credence in the removal petition. It contends that the General Assembly

3

acquiesced in the Attorney General's interpretation of these statutes because it did not thereafter make substantive changes to the statutes.[3]

The assignment of error addresses the circuit court's interpretation of the Removal Statutes. A potentially erroneous legal conclusion based on the interpretation of a statute presents "a pure question of law which we review de novo." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007).

> When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

*Id.* (internal citations and quotation marks omitted).

Furthermore, because "a proceeding to remove a public officer [is] 'highly penal in nature[,]' . . . the statute [governing such a proceeding] must be strictly construed," which means that those seeking the removal of the elected official must comply fully with the statutory requirements, and can neither add to nor subtract from those requirements. *Commonwealth ex rel. Davis v. Malbon*, 195 Va. 368, 377, 78 S.E.2d 683, 688-89 (1953) (concluding that the removal of an official could only be based on the grounds enumerated in the removal statutes); *see also 3232 Page Ave. Condo. Unit Owners Ass'n v. City of Va. Beach*, 284 Va. 639, 645, 735 S.E.2d 672, 675 (2012) (explaining that eminent domain statutes are strictly construed, that therefore "a locality must comply fully with the statutory requirements when attempting to

---

[3] The General Assembly recodified the statutes governing the removal of public officers in 1993 without making substantial changes to the language relied upon in the opinion of the Attorney General. 1993 Acts ch. 641.

4

exercise this right," and that the plain meaning of the statutes determined those statutory requirements).

Article 7 of Chapter 2 of Title 24.2 of the Code of Virginia provides the process for the removal of "all elected or appointed Commonwealth, constitutional, and local officers, except officers for whose removal the Constitution of Virginia specifically provides." Code § 24.2-230. Code § 24.2-233 specifically provides for the removal of elected officers by a circuit court in a process initiated by petition:

> Upon petition, a circuit court may remove from office any elected officer or officer who has been appointed to fill an elective office, residing within the jurisdiction of the court:
>
> > 1. For neglect of duty, misuse of office, or incompetence in the performance of duties when that neglect of duty, misuse of office, or incompetence in the performance of duties has a material adverse effect upon the conduct of the office;
> >
> > . . . .
>
> The petition *must be signed by a number of registered voters* who reside within the jurisdiction of the officer *equal to ten percent of the total number of votes cast at the last election* for the office that the officer holds.

Code § 24.2-233 (emphases added).[4]

> Code § 24.2-235 governs the procedure in the circuit court for the removal of an officer:
>
> > A petition for the removal of an officer shall state with reasonable accuracy and detail the grounds or reasons for removal and *shall be signed by the person or persons making it under penalties of perjury.* . . .

---

[4] In contrast, Code § 24.2-234 provides for the removal of an appointed officer:

Any officer appointed to an office for a term established by law may be removed from office, under the provisions of § 24.2-233, upon a petition filed with the circuit court in whose jurisdiction the officer resides signed by the person or a majority of the members of the authority who appointed him, if the appointing person or authority is not given the unqualified power of removal.

5

As soon as the petition is filed with the court, the court shall issue a rule requiring the officer to show cause why he should not be removed from office, the rule alleging in general terms the cause or causes for such removal. . . . Upon return of the rule duly executed, unless good cause is shown for a continuance or postponement to a later day in the term, the case shall be tried on the day named in the rule and take precedence over all other cases on the docket. If upon trial it is determined that the officer is subject to removal under the provisions of § 24.2-233, he shall be removed from office.

Code § 24.2-235 (emphasis added).

The plain language of Code § 24.2-235 requires that a petition for removal under Code § 24.2-233 "be signed by the person or persons making it under penalties of perjury." The only actor described relative to a petition filed under Code § 24.2-233, and thus the only actor "making" such a petition identified within the limits of the statutes, is the group who must sign the petition, which is the "number of registered voters who reside within the jurisdiction of the officer equal to ten percent of the total number of votes cast at the last election for the office that the officer holds." Reading Code §§ 24.2-233 and -235 together, we conclude that the text of the statutes requires that the signatures of ten percent of the registered voters on a petition for the removal of an elected officer must be signed under penalty of perjury.

We recognize that Code § 24.2-235, which prescribes the procedure for removal of an officer upon a petition filed under either Code §§ 24.2-233 or -234, provides for the signature of the "person or persons" making a petition for removal. However, the use of the singular "person" acknowledges that, under Code § 24.2-234, an appointed officer may be removed upon a petition "signed by *the person or* a majority of the members of the authority who appointed him." (Emphasis added.) Code § 24.2-235 accordingly provides for the making of a petition by one person, when that one person appointed an officer, as well as for the making of a petition by multiple people, whether they are the majority of the members of the authority that appointed the

6

officer, or a number of registered voters equal to ten percent of votes cast in the last election for the elected officer who is the subject of the removal petition. *See* Code §§ 24.2-233 or -234.

We note that our holding in *Johnson v. Woodard*, 281 Va. 403, 707 S.E.2d 325 (2011), did not address these distinctions in Code § 24.2-235 among those "making" a petition, nor did it address the statutory requirements for the signing of a petition by those "making" the petition. Those issues were not relevant to the resolution of that case. To the extent we implied a distinction between the makers and signers of a petition in that case, *see id*. at 406, 707 S.E.2d at 326, such comments were dicta and do not control our decision here. *Manu v. GEICO Cas. Co.*, 293 Va. 371, 382, 798 S.E.2d 598, 604 (2017) (noting that a statement in an opinion was dicta when the statement related to an issue the Court was not asked to decide).

In deciding this matter, we have also given respectful consideration to the opinion of the Attorney General concerning the interpretation of the predecessor statutes to Code §§ 24.2-233 and -235 (former Code §§ 24.1-79.5 and -79.7, respectively). 1989 Op. Atty. Gen. Va. 221, 1989 Va. AG LEXIS 11; *Beck v. Shelton*, 267 Va. 482, 492, 593 S.E.2d 195, 200 (2004) ("While it is not binding on this Court, an Opinion of the Attorney General is entitled to due consideration.") (citation and internal quotation marks omitted). We recognize that, in that opinion, the Attorney General concluded that "the language of [Code § 24.2-235] concerning the person or persons making a removal petition refers to the person or persons responsible for drafting the statement of the grounds for removal," and that "registered voters who sign a removal petition are not required to do so under penalties of perjury." 1989 Va. AG LEXIS 11, at *8-9. However, we are not bound to follow this interpretation, and do not find the Attorney General's interpretation persuasive in this instance concerning the requirements of Code §§ 24.2-233 and -235.

7

We conclude that the Attorney General opinion did not strictly limit its analysis to the language of the Removal Statutes, because the Attorney General distinguished between those who sign a petition for the removal of an elected officer and those who draft the statement of the grounds for removal that is part of such a petition, but the statutes contain no such distinction. *See, e.g.*, *Williams v. Augusta Cty. Sch. Bd.*, 248 Va. 124, 127-28, 445 S.E.2d 118, 120 (1994) (finding unpersuasive opinions of the Attorney General concerning the interpretation of a statute when they did not address subsequent statutory amendments and recodifications, and proceeding to interpret a statute according to its language). Instead, the statutes describe one petition that "shall . . . detail the grounds or reasons for removal and shall be signed by the person or persons making it under penalties of perjury." Code § 24.2-235. There is no statutory support for the proposition that a petition can be "made" by anyone other than the individuals identified in Code §§ 24.2-233 and -234.

Moreover, to the extent that the General Assembly may have acquiesced in the Attorney General's opinion by not making substantive changes to the Removal Statutes when it recodified them in 1993, any such acquiescence does not override the plain language of the statutes. *See, e.g.*, *Hampton Rds. Sanitation Dist. Comm'n v. City of Chesapeake*, 218 Va. 696, 701-02, 240 S.E.2d 819, 822-23 (1978) (noting that it was unnecessary to resort to alleged legislative acquiescence when a statute was unambiguous).

CONCLUSION

The Petition failed to comply with the requirement dictated by the text of Code §§ 24.2-233 and -235 that the signatures of petitioners, who are registered voters equal to ten percent of the votes cast in the last election, be made under penalty of perjury. The circuit court did not err

8

by granting the motion to quash the rule to show cause and dismissing the Petition. Accordingly, we affirm the judgment of the circuit court.

*Affirmed*.


JUSTICE McCULLOUGH, with whom JUSTICE POWELL JOINS, dissenting.

Virginia has long been blessed with many talented and conscientious officials who ably labor for the public good. Human fallenness being what it is, however, accountability mechanisms are necessary to protect Virginians in the rare instances when their public officials go astray. Because I disagree with the majority's interpretation of the applicable statutes, and because I fear that the majority's interpretation will have baleful consequences on the accountability of our public officials, I respectfully dissent.

For the majority, the act of signing the petition means that the signer is also a "maker" of the petition. First, as to the "making" of the petition, Code § 24.2-235 provides that

> A petition for the removal of an officer shall state with reasonable accuracy and detail the grounds or reasons for removal and shall be signed by the person or persons making it under penalties of perjury.

The persons making the petition are the moving parties behind the petition, those who have crafted or made the allegations in the petition for removal. They must sign it under penalty of perjury.

Second, obviously recognizing that a few disappointed partisans or malcontents should not disrupt the smooth functioning of government, the General Assembly requires that the persons making the petition obtain support in the form of signatures before a court will inquire into the alleged malfeasance of the elected or appointed official. Code § 24.2-233 provides that

9

The petition must be signed by a number of registered voters who reside within the jurisdiction of the officer equal to ten percent of the total number of votes cast at the last election for the office that the officer holds.

This signature requirement could not be more plain. It says nothing about signing under penalty of perjury. The majority erroneously imports that requirement, as it exists only in the language of Code § 24.2-235, into Code § 24.2-233.

The majority's interpretation renders the phrase "by the person or persons making it" entirely superfluous. Under the majority's reading, Code § 24.2-235 means, with that language stricken:

A petition for the removal of an officer shall state with reasonable accuracy and detail the grounds or reasons for removal and shall be signed ~~by the person or persons making it~~ under penalties of perjury.

We ordinarily resist a construction of the statutes that would render a portion of the statute superfluous. "Words in a statute should be interpreted, if possible, to avoid rendering words superfluous." *Cook v. Commonwealth*, 268 Va. 111, 114, 597 S.E.2d 84, 86 (2004) (collecting cases). This is so because, as we have long recognized, we must assume that in enacting legislation, "the [General Assembly] did not intend to do a vain and useless thing." *Williams v. Commonwealth*, 190 Va. 280, 293, 56 S.E.2d 537, 543 (1949). Similarly, we regularly reject invitations to "read into [a] statute language that is not there," because of the long-established rule that "[c]ourts cannot add language to [a] statute the General Assembly has not seen fit to include." *Wakole v. Barber*, 283 Va. 488, 495-96, 722 S.E.2d 238, 242 (2012) (quoting *Jackson v. Fidelity & Deposit Co.*, 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005)); *see also Holsapple v. Commonwealth*, 266 Va. 593, 599, 587 S.E.2d 561, 564-65 (2003) (same). In addition, we have

10

acknowledged on many occasions that "when the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional." *RGR, LLC v. Settle*, 288 Va. 260, 295, 764 S.E.2d 8, 28-29 (2014) (quoting *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337, 714 S.E.2d 922, 925 (2011)).

Read together then, and applying the interpretive principles noted above, Code § 24.2-235 requires the persons making the petition to state with some precision the grounds for removal of an appointed or elected official, and sign the petition under penalty of perjury. The persons making the petition must then obtain the number of signatures required under Code § 24.2-233 to ensure that the petition is not devoid of support in the population of that jurisdiction. In this reading, the "under penalty of perjury" signing requirement, which appears only in the statute addressing the making of the petition, Code § 24.2-235, is not read into or otherwise imported into Code § 24.2-233, which addresses only the number of signatures of registered voters that the makers of the petition need to obtain as a prerequisite of filing the petition so that a court may consider it.

It is hard to believe that the General Assembly was unaware of the practical difficulties of recalling an elected or appointed official. First, the makers of the petition must step forward and allege what the public official has done. These individuals are subject to a perjury prosecution for any lies or fabrications. Perjury is no small matter. It constitutes a Class 5 felony, Code § 18.2-434, punishable by up to 10 years in prison. *See* Code § 18.2-10(e). Then those persons who are seeking the removal of the public official must obtain a large number of signatures,

11

which is no easy feat.* Although the number of signatures in rural counties may be smaller owing to a smaller population, limited population density presents its own set of challenges. Furthermore, in obtaining the required number of signatures success only means a hearing, it does not necessarily mean that removal of the official will result.

As a practical matter, few citizens closely follow the actions of their local elected officials. Ten percent of the number of citizens who voted at the last election might be willing to sign a petition if they become persuaded that a court needs to inquire into plausible allegations of malfeasance or incompetence leveled by what appears to them to be concerned citizens. Asking these persons, most of whom will know nothing about the particular allegations raised, to sign under penalty of perjury will act as a significant deterrent to garnering the necessary number of signatures. I fear that grafting a requirement into Code § 24.2-233 that signatories consisting of ten percent of the votes cast sign under penalty of perjury will present an insurmountable obstacle for the recall of wayward officials. In turn, the lessened fear of accountability may increase the temptation to misbehave.

Finally, if the persons making the petition are properly understood to be those who have crafted the allegations of misconduct, it is realistic to believe the "persons making" the petition could be charged with perjury when they make willfully false allegations in the petition. But it is completely unrealistic to expect thousands or even tens of thousands of citizens who have signed

---

* According to figures drawn from the State Board of Elections' website, the following total votes were cast in the most populous counties in Virginia for the most recent elections for Clerk of Court (the position at issue in this case): 180,706 votes (Fairfax County, 2015); 25,794 votes (Prince William County, 2017); 35,558 votes (Virginia Beach City, 2011); 64,797 votes (Loudoun County, 2015); and 57,898 votes (Chesterfield County, 2015). In those jurisdictions, for example, a petition for removal would require 18,071 signatures, 2,579 signatures, 3,556 signatures, 6,480 signatures, and 5,790 signatures, respectively – all under penalty of perjury under the majority's gloss on the statutes.

12

a petition for removal to be prosecuted for perjury if the allegations in the petition turn out to be false. If that is a fanciful prospect, then, it is fair to ask, exactly what is the point of making the residents of the county who are not the instigators or "persons making" the petition sign it under penalty of perjury?

In my view, the Attorney General's longstanding construction of the statute was the correct one, and I would adhere to it.